2015-1628, -1629

---

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

DYNAMIC 3D GEOSOLUTIONS LLC,
Plaintiff-Appellant,

ACACIA RESEARCH CORPORATION, ACACIA RESEARCH GROUP LLC,
Nonparties-Appellants,

v.

SCHLUMBERGER LIMITED (SCHLUMBERGER N.V.), SCHLUMBERGER
HOLDINGS CORPORATION, SCHLUMBERGER TECHNOLOGY
CORPORATION,
Defendants-Appellees,

---

*Appeal from the United States District Court for the Western District of Texas in
case no. 1:14-cv-00112-LY, Judge Lee Yeakel*

---

## CORRECTED OPENING BRIEF AND ADDENDUM
## OF APPELLANTS ACACIA RESEARCH CORPORATION AND
## ACACIA RESEARCH GROUP, LLC

---

Marc J. Schneider
Travis P. Brennan
STRADLING YOCCA CARLSON
  & RAUTH, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, California 92660
Telephone: (949) 725-4000
Facsimile: (949) 725-4100
Email: mschneider@sycr.com
Email: tbrennan@sycr.com
*Attorneys for Appellants ACACIA RESEARCH
CORPORATION and ACACIA RESEARCH
GROUP, LLC*

# CERTIFICATE OF INTEREST

Counsel for Appellants certifies the following:

1.      We represent Acacia Research Corporation and Acacia Research Group, LLC.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented:  Not applicable.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented:  Acacia Research Corporation is a publicly held company and the sole member of Acacia Research Group, LLC.  Acacia Research Corporation has no parent corporation. According to Acacia Research Corporation's Proxy Statement filed with the United States Securities and Exchange Commission in April 2015, FMR LLC and DePrince, Race & Zollo, Inc. are each beneficial owners of more than 10% of Acacia Research Corporation's outstanding common stock.

4.      The names of all law firms and the partners or associates that appeared for party or amicus curiae now represented in trial court or agency or are expected to appear in this court are:

STRADLING YOCCA CARLSON & RAUTH, P.C.:

Marc J. Schneider
Travis P. Brennan

TAYLOR DUNHAM & RODRIGUEZ LLP

Cabrach J. Connor
Miguel S. Rodriguez

Dated:  August 20, 2015                    Respectfully submitted,

                                           STRADLING YOCCA CARLSON
                                             & RAUTH, P.C.

                                           By:    */s/ Marc J. Schneider*
                                                  Marc J. Schneider

                                           *Attorney for Appellants ACACIA RESEARCH*
                                           *CORPORATION and ACACIA RESEARCH*
                                           *GROUP, LLC*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF CONTENTS ...................................................................... iii

TABLE OF AUTHORITIES .................................................................. vi

TABLE OF ABBREVIATIONS ............................................................... ix

STATEMENT OF RELATED CASES .................................................... x

INTRODUCTION ............................................................................... 1

JURISDICTIONAL STATEMENT ........................................................ 4

STATEMENT OF THE ISSUES.......................................................... 6

STATEMENT OF THE CASE.............................................................. 8

STATEMENT OF FACTS .................................................................. 10

SUMMARY OF THE ARGUMENT ...................................................... 26

ARGUMENT ..................................................................................... 32

I.    CONTROLLING LAW AND STANDARD OF REVIEW ........................ 32

II.   THE DISTRICT COURT DENIED ARG'S DUE PROCESS
      RIGHTS IN REFUSING TO HEAR FROM IT. ............................... 33

      A.    As A Target Of Disqualification, ARG Had A Right To Be
            Heard. ......................................................................... 33

      B.    The District Court Prevented ARG From Being Heard Less
            Than 24 Hours After Permitting Schlumberger To File 151
            Pages Of More Briefing And Evidence. ............................. 35

III.  THE DISTRICT COURT FAILED  TO APPLY THE FIFTH
      CIRCUIT'S "BALANCING APPROACH." ..................................... 37

      A.    Controlling Precedent Balances Equitable Factors, Including
            Prejudice Resulting From Disqualification Of An Entire
            Company's "In-House Counsel." ....................................... 37

B.    The Order Seriously Impairs The Property Rights Of Acacia And Its Subsidiaries Without Justification..........................................38

IV.   THE DISTRICT COURT INCORRECTLY HELD THAT IT "MUST" PRESUME THAT RUTHERFORD SHARED CONFIDENTIAL SCHLUMBERGER INFORMATION WITH ACACIA "IN-HOUSE COUNSEL."...........................................................41

A.    The Fifth Circuit Has Embraced A Trend To "Eliminate Or Restrict Imputed Disqualification." .....................................................41

B.    The Fifth Circuit Rejects An Irrebuttable Presumption And Has Expressly Left Open The Necessity Of A Rebuttable Presumption. .........................................................................................43

C.    The Order Is Inconsistent With Controlling Precedent.......................46

D.    No Presumption Applies Here Because None Of Acacia's "In-House Counsel" Worked For Schlumberger Or A Firm That Did. ....................................................................................................47

V.    THE DISTRICT COURT'S "FINDINGS" ARE LEGALLY INSUFFICIENT TO SUPPORT DISQUALIFICATION OF ACACIA'S "IN-HOUSE COUNSEL." .......................................................51

VI.   THE DISTRICT COURT FAILED TO APPLY THE PARTIES' RESPECTIVE BURDENS OF PROOF..........................................................54

A.    Acacia Had Only A Rebuttal Burden Of Production And The Ultimate Burden Of Persuasion Was To Remain With Schlumberger...........................................................................................54

B.    In Failing To Allocate Evidentiary Burdens Properly, The District Court Used Something More Than A Rebuttable Presumption. .........................................................................................55

VII.  ANY PRESUMPTION THAT RUTHERFORD SHARED CONFIDENTIAL SCHLUMBERGER INFORMATION WITH ACACIA "IN-HOUSE COUNSEL" WAS CONCLUSIVELY REBUTTED. ..............................................................................................57

iv

A.      This Court Should Examine The Evidentiary Record De Novo Given The District Court's Refusal To Do So And Failure To Make Adequate Findings Of Fact. ........................................................57

B.      The District Court Improperly Presumed That Sworn Statements Of Four Witnesses Were All False. .................................58

C.      The Documents Produced By Rutherford, Austin Geo And Acacia Are Consistent With These Sworn Statements. ......................61

D.      The District Court Committed Clear Error By Making Unsupported Determinations That Contradict Key Evidence. ...........62

VIII.   CONCLUSION AND PRAYER FOR RELIEF ...........................................66

**ADDENDUM**

Final Judgment, Dated March 31, 2015............................................................A0001

Order Granting Motion to Disqualify, Dated March 31, 2015 ............ A0002-A0015

LITIOC/2123207v2/101022-0109

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abney v. Wal-Mart*,
   984 F. Supp. 526 (E.D. Tex. 1997) ......................................................................63

*ACS Hospital Sys., Inc. v. Montefiore Hospital*,
   732 F.2d 1572 (Fed. Cir. 1984), *overruled on separate grounds by*
   *McNeil-PPC, Inc. v. Perrigo Co.*, 516 F. Supp. 2d 238 (S.D.N.Y. 2007) .........33

*Allergan, Inc. v. Apotex Inc.*,
   754 F.3d 952 (Fed. Cir. 2014) ...............................................................................64

*Bonilla-Torres v. Wal-Mart Transp. LLC*,
   309 Fed. App'x 882 (5th Cir. 1969) (per curiam) .............................................45

*Brennan v. Brennan*,
   548 Fed. App'x 264 (5th Cir. 2013) ..................................................................64

*Brennan's, Inc. v. Brennan's Restaurants, Inc.*,
   590 F.2d 168 (5th Cir. 1979) ..................................................................48, 50, 51

*Carbo Ceramics v. Norton-Alcoa Proppants*,
   155 F.R.D. 158 (N.D. Tex. 1994) ......................................................................63

*Concrete Unlimited Inc. v. Cementcraft, Inc.*,
   776 F.2d 1537 (Fed. Cir. 1985) .........................................................................39

*Crash Dummy Movie, LLC v. Mattel, Inc.*,
   601 F.3d 1387 (Fed. Cir. 2010) .........................................................................54

*Cushman v. Shinseki*,
   576 F.3d 1290 (Fed. Cir. 2009) .........................................................................39

*EEOC v. Louisiana Office of Comm. Servs.*,
   47 F.3d 1438 (5th Cir. 1995) .............................................................................33

*FDIC v. United States Fire Ins. Co.*,
   50 F.3d 1304 (5th Cir. 1995) .............................................................................32

*Gaalla v. Brown,*
     460 Fed. App'x 469 (5th Cir. 2002) ................................................................57

*Hardison v. Abdon Callais Offshore, LLC,*
     551 Fed. App'x 735 (5th Cir. 2013) ......................................................33, 57

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream,*
     409 F.3d 127 (2d Cir. 2005) ................................................................51

*Hervey v. Miss. Dep't of Educ.,*
     404 Fed. App'x 865 (5th Cir. 2010) ................................................................54

*Ibarra v. Baker,*
     338 Fed. App'x 457 (5th Cir. 2009) ................................................................64

*In re American Airlines, Inc.,*
     972 F.2d 605 (5th Cir. 1992) ................................................................passim

*In re Corrugated Container Antitrust Litigation,*
     659 F.2d 1341 (5th Cir. 1981) ................................................................48

*In re DataTreasury Corp.,*
     No. 2010-M928, 2010 U.S. App. LEXIS 16631 (Aug. 5, 2010) ...............passim

*In re Dresser Indus., Inc.,*
     972 F.2d 540 (5th Cir. 1992) ......................................................41, 48

*In re Trans Texas Holdings Corp.,*
     498 F.3d 1290 (Fed. Cir. 2007) ................................................................34

*Kennedy v. MindPrint (In re ProEducation Int'l, Inc.),*
     587 F.3d 296 (5th Cir. 2009) ................................................................passim

*McNeil-PPC, Inc. v. L. Perrigo Co.,*
     337 F.3d 1362 (Fed. Cir. 2003) ................................................................39

*Moore v. Honeywell Int'l, Inc.,*
     159 Fed. App'x 566 (5th Cir. 2005) ................................................................54

*Nat'l Oilwell Varco, LP v. Omron Oilfield & Marine,*
     60 F. Supp. 3d 751 (W.D. Tex. 2014) ................................................................passim

vii

*On-Line Careline, Inc. v. America Online, Inc.*,
    229 F.3d 1080 (Fed. Cir. 2000) ..........................................................54

*Stokes v. BWXT Pantex, LLC*,
    424 Fed. App'x 324 (5th Cir. 2011) .................................................57

*Stone v. FDIC*,
    179 F.3d 1368 (Fed. Cir. 1999) .............................................34, 35, 39

*Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*,
    97 Fed. App'x 462 (5th Cir. 2004) ....................................................57

*United States v. Butler*,
    637 F.3d 519 (5th Cir. 2011) ............................................................52

*United States v. Mann*,
    161 F.3d 840 (5th Cir. 1998) ............................................................32

## STATUTES

28 U.S.C. § 1295(a)(1) ..............................................................................4

28 U.S.C. §§ 1338(a) and 1400(b) ...........................................................4

28 U.S.C. § 2107 .......................................................................................4

Tex. Gov't Code Ann., tit. 2 .....................................................................43

## OTHER AUTHORITIES

Fed. R. App. P. 4 (a)(4)(B)(i) ....................................................................4

Fed. R. App. P. 28(i) .................................................................................3

Local Rule AT-7(a) ..................................................................................42

Texas Rule 1.09(b) ...................................................................................43

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| '319 Patent | U.S. Patent No. 7,986,319 |
| A_____ | Cited page(s) of the Joint Appendix |
| ARC | Acacia Research Corporation |
| ARG | Acacia Research Group, LLC |
| Acacia | ARC and ARG, collectively |
| Austin Geo | Austin Geomodeling, Inc. |
| Collins Edmonds | Collins Edmonds Pogorzelski Schlather & Tower, PLLC |
| Dynamic 3D | Dynamic 3D Geosolutions, LLC |
| Judgment | Final Judgment dated March 31, 2015 (ECF Doc. 135) |
| Order | Order dated March 31, 2015 (ECF Doc. 134) |
| Schlumberger | Schlumberger Limited (Schlumberger N.V.), Schlumberger Holdings Corporation, and Schlumberger Technology Corporation, collectively |

LITIOC/2123207v2/101022-0109

**STATEMENT OF RELATED CASES**

Other than the consolidated appeal of Plaintiff-Appellant Dynamic 3D Geosolutions, LLC, there have been no other appeals before this or any other appellate court from the civil action giving rise to this appeal.

LITIOC/2123207v2/101022-0109

## INTRODUCTION

This appeal concerns whether a court may bar or seriously impair companies' ability to enforce their property rights despite denying their attempt to be heard, and whether every "in-house counsel" employed by a non-party, non-law firm, each of whom never represented the Defendant, should be disqualified from representing the Plaintiff.

Defendant Schlumberger moved to disqualify:

(i)    Charlotte Rutherford (a business development executive at non-party ARG and former Schlumberger in-house attorney);

(ii)    all "in-house counsel for [non-party] Acacia Research Corporation and its subsidiaries" (which includes non-party ARG, Plaintiff Dynamic 3D's parent company), including Gary Fischman, an ARG licensing executive and attorney contracted to Dynamic 3D as its "in-house counsel;" and

(iii)    the Collins Edmonds law firm, Dynamic 3D's outside counsel.

Schlumberger charged that Rutherford, while at Schlumberger, had worked on matters "substantially related" to Dynamic 3D's claim that Schlumberger's Petrel product infringes its '319 Patent. Schlumberger demanded that the District Court dismiss the case entirely due to conflicts of interest it said presumptively arose

1

from that "substantial relationship" by virtue of Rutherford becoming an ARG employee.

The District Court, after declaring that it would not examine the whole record and refusing ARG's request to be heard, issued its Order granting the motion and awarding the unprecedented relief of dismissal. It also entered Judgment in favor of Schlumberger, closing the case.

The District Court erred on several issues of law, failed to make specific findings of fact, and incorrectly paraphrased uncited "evidence" in a manner that directly and materially contradicts the actual evidence, including sworn deposition testimony or declarations from each of four attorneys. That evidence, which is un-contradicted, shows that Rutherford did not share confidential information obtained from Schlumberger with others at Acacia—the dispositive question of fact with respect to Acacia "in-house counsel" under controlling precedent's "balancing approach," an approach the District Court failed to follow. Without holding Schlumberger to its burden of proof or explaining why four attorneys' sworn statements deserved no weight, the District Court instead relied on a mere suspicion that Rutherford shared Schlumberger confidences, which is legally insufficient and has no support in the evidentiary record. The unprecedented result of the Order and Judgment is that Acacia and its subsidiaries are barred or seriously impaired from enforcing their property rights against Schlumberger.

This brief addresses seven (7) errors relating directly to disqualification of "all in-house counsel for Acacia Research Corporation and its subsidiaries," each of which warrants reversal of the Order and Judgment. This brief does not address the disqualifications of Rutherford or Collins Edmonds, which are addressed in Dynamic 3D's opening brief.[1]

---

[1] Because at least some of the errors addressed by Dynamic 3D impact Acacia indirectly, Acacia adopts and incorporates herein by reference Dynamic 3D's opening brief under Fed. R. App. P. 28(i).

# JURISDICTIONAL STATEMENT

Acacia brings this Appeal from the United States District Court for the Western District of Texas to the United States Court of Appeals for the Federal Circuit in accordance with 28 U.S.C. § 1295(a)(1). *See* Fed. R. App. P. 4 (a)(4)(B)(i).

This is a case arising under the United States Patent Laws and jurisdiction exists under 28 U.S.C. §§ 1338(a) and 1400(b). Acacia is appealing the Order of the District Court entered on March 31, 2015 (1) disqualifying Charlotte Rutherford from representing Dynamic 3D in the case; (2) disqualifying all in-house counsel for non-party Acacia Research Corporation and its subsidiaries, including ARG and Dynamic 3D, from representing Dynamic 3D is this case; (3) disqualifying Collins Edmonds and all lawyers in the firm from representing Dynamic 3D in the case; and (4) dismissing without prejudice all claims and causes of action asserted by Dynamic 3D against Schlumberger. (A0002 – A00015.) Acacia is also appealing the Judgment entered on March 31, 2015, in which the District Court closed the case due to the Order of dismissal. (A0001.) The Order and Judgment are final orders because they fully dispose of all parties' claims.

This Appeal has been timely taken within thirty (30) days of the aforementioned order and final judgment pursuant to 28 U.S.C. § 2107. The orders

appealed from were entered on March 31, 2015 and the notice of appeal was filed on April 30, 2015.  (A4739.)

## STATEMENT OF THE ISSUES

1.     Did the District Court err in denying Acacia's right to be heard in response to Schlumberger's motion to disqualify "all in-house counsel for Acacia Research Corporation and its subsidiaries?"

2.     Did the District Court err in disqualifying "all in-house counsel for Acacia Research Corporation and its subsidiaries" without weighing equitable factors, including resulting prejudice to Acacia and its subsidiaries, as part of the Fifth Circuit's balancing approach?

3.     Did the District Court err in holding that it "must" apply a rebuttable presumption that Rutherford shared confidential information obtained from Schlumberger with "in-house counsel for Acacia Research Corporation and its subsidiaries?"

4.     Did the District Court err in concluding that the purported facts summarized in its Order were legally sufficient to determine that Rutherford shared confidential Schlumberger information with "in-house counsel for Acacia Research Corporation and its subsidiaries?"

5.     If the District Court did not err in holding that a rebuttable presumption was necessary, did it err in failing to apply the litigants' respective burdens of proof regarding whether Rutherford shared confidential Schlumberger

information with "in-house counsel for Acacia Research Corporation and its subsidiaries?"

6.    Did the District Court err in holding unrebutted a presumption that Rutherford shared confidential information obtained from Schlumberger with "in-house counsel for Acacia Research Corporation and its subsidiaries?"

7.    Did the District Court err in finding that Rutherford shared confidential information obtained from Schlumberger with "in-house counsel for Acacia Research Corporation and its subsidiaries?"

7

## STATEMENT OF THE CASE

Dynamic 3D filed suit against Schlumberger for infringing U.S. Patent No. 7,896,319 on February 4, 2015. (A0093.)  On August 15, 2014, Schlumberger filed a motion to disqualify counsel and to dismiss without prejudice. (A0701.) Dynamic 3D filed its response in opposition to the motion on September 5, 2014. (A1284.) On September 11, 2014, Schlumberger served subpoenas *duces tecum* on eight third parties, including ARG, ARC and Fischman.   (A3298-99.)   On September 19, 2014, Schlumberger filed a reply brief in support of its motion. A1622-2194.)  On November 19, 2014, less than 24 hours before the hearing on its motion, Schlumberger filed a "Supplemental Submission" and supporting evidence totaling 151 pages.  (A3158 – A3309; *see also* A3824 – A3855.) That evidence included emails and other documents produced by ARG (on behalf of itself, ARC and Fischman) in response to the subpoenas, which had been narrowed by court order following motions to quash. (*Id*.)  At the hearing on November 20, 2014, the District Court heard oral argument from Dynamic 3D and Schlumberger, but refused ARG's request to be heard.  (A3468 ln. 21-23.)

On March 31, 2015, the District Court entered its order (1) disqualifying Charlotte Rutherford from representing Dynamic 3D in the case; (2) disqualifying all in-house counsel for non-party Acacia Research Corporation and its subsidiaries, including ARG and Dynamic 3D, from representing Dynamic 3D in

8

this case; (3) disqualifying Collins Edmonds and all lawyers in the firm from representing Dynamic 3D in the case; and (4) dismissing without prejudice all claims and causes of action asserted by Dynamic 3D against Schlumberger. (A0002 – A00015.) Also on March 31, 2015, the District Court entered Judgment awarding Schlumberger costs of court and closing the case. (A0001.) Acacia timely appealed the order and final judgment on April 30, 2015. (A4739.)

9

## STATEMENT OF FACTS

**Acacia And Its Subsidiaries License Technologies That They Own Or Control.**

Acacia helps inventors and other patent holders maximize the value of their patented technologies. It is not a law firm. ARG, ARC's wholly-owned operating subsidiary, negotiates to acquire patent rights from patent holders. (A1439 ¶¶ 4, 5; A3842.) ARG assigns each acquired patent portfolio to a wholly-owned subsidiary, which also assumes obligations under the acquisition agreement, typically including sharing future royalties with the patent holder. For example, ARG completed a purchase of the '319 Patent from Austin Geo in November 2013 in exchange for sharing future royalties, and subsequently assigned the patent to its subsidiary, Dynamic 3D. (A1439 ¶¶ 3-5; A1440 ¶¶ 10; A3374 ¶ 5; A3842.)

ARG employs several licensing executives, such as Gary Fischman, who are also attorneys. (A3375.) These executives are contracted to ARG subsidiaries to direct patent licensing and enforcement efforts on their behalf. Fischman is responsible for the Dynamic 3D portfolio. (A3375; A1439-40.)

**Acacia Identifies Potential Infringers Of The '319 Patent Before Hiring Rutherford.**

Third party Austin Geo owned the '319 Patent in early 2013. (A1296; A1439-40.) It is undisputed that, by at least April 2013, Acacia had identified the '319 Patent as an acquisition target, and had identified at least Halliburton, Schlumberger, and Paradigm as potential infringers. (A1334 ¶ 28; A1294.) Erik

10

Ahroon, an Acacia business development executive, John Schneider, a licensing executive, and Phil Mitchell, an Acacia engineer, were the first to bring the '319 Patent and the relevant market to the attention of Acacia's senior management. (A3838-40; A3848.)

**Acacia Hires Charlotte Rutherford On May 31, 2013 To Expand Business Development And Manage The Houston Office.**

On May 31, 2013, Acacia hired Rutherford as a Senior Vice President to oversee business development in the energy sector and manage Acacia's Houston office.  (A0880; A1332-33.)  Rutherford had previously been an in-house attorney at Schlumberger.  (A1306.)  Acacia did not hire Rutherford as a licensing executive to direct patent licensing or enforcement on behalf of ARG subsidiaries. (A0815.)  Rutherford has testified in deposition[2] that she played no role in identifying the '319 Patent as an acquisition target or identifying potential infringers of the '319 Patent.  (A1334 ¶ 28; A1390 ln. 2-17; A1390-91; A1294; A1431 ln.3-11.)  Rutherford refused to discuss Schlumberger or its Petrel product

---

[2] The deposition was taken in a Texas state court case filed in the 127th Judicial District, Harris County shortly after Dynamic 3D sued Schlumberger for infringement.  In that case, Schlumberger unsuccessfully sued Rutherford for misappropriation of trade secrets and other claims.  Schlumberger was ordered to pay $600,000 in Rutherford's attorneys' fees and sanctions when the court dismissed the complaint under Texas's Anti-SLAPP statute due to Schlumberger's inability to make the *prima facie* case required under the statute.  (A1345.) Schlumberger is appealing the dismissal and award of attorneys' fees and sanctions.  (A1630; A1797.)  Schlumberger's lead counsel in this infringement case conducted the two-day deposition of Rutherford in the state case.  (A3297.)

11

with anyone at Acacia.  (A1388 ln. 11-19; A1440 ¶ 6; A3376 ¶¶ 5-8.)  She further testified that she never disclosed any Schlumberger confidential information to anyone at Acacia.  (A1430-31; A1388 ln. 11-19; A1389 ln. 10-19; A1400-01.)

In July 2013, ARG hired Fischman as a licensing executive for the Houston office.  (A1439 ¶ 3.)  Fischman is a former patent litigator and member of the Texas Bar.  (*Id.*)

**Austin Geo Pitches A "Partnership" To Acacia, But Schlumberger Is Not Discussed Because Rutherford States That She Cannot Discuss It.**

In late June 2013, ARG, led by Ahroon, and Austin Geo began planning a meeting for the following week at ARG's Houston office.  (A3830-31.)  On July 2, 2013, Ahroon, Schneider, Mitchell, and Rutherford met in person with Robin Dommisse and Tron Isaksen of Austin Geo.  (A0755-77.)  During the meeting, Austin Geo made a business case for why Acacia should acquire the '319 Patent using a presentation about its RECON product and the relevant market.  (A3481-A3521.)  The presentation identified Halliburton, Schlumberger, Paradigm, Emerson, IHS, Landmark, Baker Hughes, CGG and at least 11 others as "market competitors."  (A3507-A3512.)

When Austin Geo first mentioned Schlumberger, Rutherford said she was a former Schlumberger employee and could not discuss Schlumberger.  (A1428 ln. 14-25.)  As a result, Schlumberger and its Petrel product were not discussed at the meeting.  (A3507.)  Rutherford verified this under oath in her deposition:

12

Q: Was there a specific discussion about Schlumberger at this first meeting with Austin Geomodeling? "Yes" or "no"?

A: As to Schlumberger, I told the people attending the meeting that I could not discuss Schlumberger.

Q: I appreciate that, my question was: Was there a discussion about Schlumberger at that meeting? "Yes" or "no"?

A: No.

   ........

Q: Was the Petrel product discussed during the first Austin GeoModeling agreement [sic]?

A: The word "Petrel" was mentioned.

Q: It was? Who mentioned it? Name is all I'm looking for.

A: The – Austin Geo did.

Q: Yeah. What was the substance of the discussion regarding the Petrel product at the first meeting with Austin Geomodeling?

A: The inventor mentioned that Schlumberger had a software product called Petrel.

Q: What else?

A: Nothing else.

(A0759-A0760 (objections omitted)).

Later in July 2013, Austin Geo repeated its pitch at another meeting with Acacia. (A3835.) The second meeting "was a repeat of the first meeting, but with new members of the Acacia energy team." (A0763.) Rutherford testified that, after she told the attendees that "I cannot talk about Schlumberger … there was no further conversation about Schlumberger at the first or second meeting because the conversation was similar, if not almost identical, at the first and second meeting." (A1428 ln. 20-25.)

13

No documents in the record show Rutherford communicating confidential information about *Schlumberger* or *Petrel* to anyone.  (A3215-16; A3218-19; A3221; A3223-24; A3526-27; A3530-31; A3533-34; A3536-37; A3830-31; A3833; A3835; A3837-40; A3842-44; A3846.)  Rutherford testified that she never had "conversations or communications" with anyone at Acacia concerning Schlumberger or Petrel.  (A1388 ln. 11-19.)

## On August 20, 2013, ARG Agrees To Acquire The '319 Patent Subject To Acceptable Completion Of Due Diligence Led By Fischman.

On August 20, 2013, ARG signed an agreement with Austin Geo to acquire the '319 Patent subject to ARG's acceptable completion of due diligence. (A1439.)  The notice circulated to Acacia's senior management and executives giving internal confirmation of the acquisition said "Potential licensees include Halliburton, Schlumberger, Paradigm and other oilfield services companies. Brought in by Erik [Ahroon]."  (A3848.)

As the licensing executive and "in-house" attorney, Fischman led the due diligence, which involved legal and technical analyses of the patent's claims and potentially infringing products.  (A1296; A1440 ¶¶ 5-7.)  ARC CEO and ARG President, Matthew Vella, who made the decision to acquire the '319 Patent upon completion of due diligence, Fischman, and Rutherford have all confirmed under oath that Rutherford communicated no information about Schlumberger or Petrel to them in connection with the due diligence or otherwise.  (A1440 ¶¶ 5-7; A3373-

14

74 ¶¶ 3-5; A3375-76 ¶¶ 4-8.)  No documents from the due diligence period show

Rutherford communicating information to anyone about Schlumberger or Petrel.

(A3540; A3277-78; A3540-41; A3543-44; A3546-47; A3551-52; A3850.)

**Rutherford Attends A Teleconference Presentation Regarding The '319 Patent, But Drops Off The Call Before Any Discussion Of Schlumberger.**

On November 7, 2013, Fischman, Vella, Rutherford and Mitchell attended a

conference call in which Fischman made a presentation regarding the '319 Patent.

(A1440 ¶ 5.)  Rutherford intentionally and permanently disconnected from the call

before Schlumberger was to be discussed:

> Q:  Okay.  Were you on the call for the entire call, from beginning to end?
> A:  No.
> Q:  Okay.  How much of the call did you participate in?
> A:  I participated in the call up to the point there was a discussion of Schlumberger, and I removed myself from the call.
> Q:  Did you re-join the call or not?
> A:  I did not.

(A1389 ln. 10-19.)  In his declaration, Fischman confirmed that Rutherford exited

the call before Schlumberger was discussed.  (A1440 ¶ 6.)

**ARG's President Decides To Complete Acquisition Of The '319 Patent And Assigns The Portfolio To Dynamic 3D, Which Begins Licensing And Enforcement Efforts.**

At the conclusion of the November 7, 2013 call, Vella decided to complete

ARG's acquisition of the '319 Patent.  (A1440 at ¶ 8.)  On or around November

15

18, 2013, ARG sent to Austin Geo a letter of "acceptable completion" of due diligence, which confirmed the acquisition.  (A3850-52; A1440 ¶ 10; A3551.)

Rutherford did not contribute to any of the due diligence.  (A1295; A1390-91.)  She did not take part in any analysis of the validity or value of the '319 Patent or whether any product infringed the Patent.  (A1384 ln. 13, 25; A1388 ln. 11-19; A1390 ln. 12; A1397 ln. 22; A3540; A3277-78; A3540-41; A3543-44; A3546-47; A3551-52; A3850.)  She identified Vella as the ultimate decision maker and clarified that she did not make any recommendation to him about acquiring the '319 Patent.  (A1396.)  Rutherford had no input into negotiating the terms of acquisition.  (A1433 at ln. 1-9.)

In December 2013, ARG assigned the '319 Patent and related obligations to Dynamic 3D, which engaged Collins Edmonds.  (A0894 at ¶ 23.)  On Thursday, January 29, 2014, Collins emailed to Fischman a copy of the Schlumberger complaint (which was filed six days later).  (A3602.)  Fischman forwarded the email attaching the complaint to Rutherford, who responded with:  "Thanks Gary. Good job.  Please extend my thanks to CEPIP [Collins Edmonds]."  (*Id*.)  The complaint went unchanged between the time of Fischman's forwarded email to Rutherford and the time of its filing.  (A3572-84; A3619-30.)  Fischman, Collins, and Rutherford have confirmed under oath that Rutherford had no input,

LITIOC/2123207v2/101022-0109

comments, or edits to the complaint.  (A3376 ¶ 7; A1422 ln. 1-17; A1444-45 ¶¶ 7-8, 13-14.)

Later that day, a paralegal circulated a standard, internal "Notice of New Litigation" to Acacia executives on behalf of Dynamic 3D concerning the anticipated lawsuits against Halliburton and Schlumberger requesting that each "respond using [Microsoft Outlook] voting buttons embedded in the email" to confirm whether anyone might have an objection to proceeding with the new litigation.  (A3586.)  In so doing, Debra Garay, an Acacia executive assistant, will routinely check for name matches between the new litigants and entities that may be in Acacia's contacts database.  In this instance, she replied "[p]ossible conflicts in CRM" simply because Schlumberger's name existed in Acacia's contacts database, *i.e.*, CRM.[3]  (A3586.)

Rutherford responded to the "Notice of New Litigation" by selecting the button called "I have no objection."  (A3595.)  This is the Acacia "evidence" Schlumberger mischaracterized in support of its incorrect assertion that Rutherford "concurred" in the lawsuit and therefore helped develop the case against Schlumberger.  (A3163.)

---

[3] "CRM" stands for "customer relationship management" and is popular shorthand for referring to the database many large companies use to manage their interactions with current and potential customers for business development purposes.

On February 4, 2014 Dynamic 3D filed its complaint against Schlumberger and a separate complaint against Halliburton alleging infringement of the '319 Patent.  (A3619-30; A3609-11.)  Fischman forwarded the complaints to Rutherford.  (A3609-11; A3613-14.)  As described above, Rutherford had done nothing more than state her non-objection to the suit being filed and compliment Fischman and Collins Edmonds for a "good job" upon receiving the Schlumberger complaint.  (A3602-03; A3607.)

**Schlumberger Makes Its Motion To Disqualify And Later Files A 151-Page "Supplemental Submission" Less Than 24 Hours Before The Hearing, But The District Court Refuses ARG's Request To Be Heard In Response.**

On August 15, 2014, Schlumberger filed its motion to disqualify Rutherford, Collins Edmonds and "all in-house counsel of Acacia Research Corporation and its subsidiaries."  (A0701-1283.)  On September 5, 2014, Dynamic 3D filed its opposition.  (A1284-1552.)  On September 11, 2014, Schlumberger served document subpoenas with virtually identical requests for production on *eight* third parties:  Rutherford, Fischman, ARC, ARG, Acacia Technology, LLC (a defunct entity), Collins Edmonds, Collins, and Austin Geo.  (A3298-99.)  Each third party moved to quash.  (A3291-3309; A2195-2275.)

The presiding magistrate judge agreed that "Schlumberger's first set of subpoenas were overbroad" and adopted limitations very similar to what ARG and Fischman had proposed.  (A3089 ln. 6-7.)  On November 14, 2014, ARG (on

18

behalf of itself, Fischman, and ARC) produced responsive documents, including emails, and a privilege log. (A3160.) [4]

On November 19, 2014, Schlumberger filed a "Supplemental Submission" and supporting evidence totaling 151 pages. (A3158-A3309; *see also* A3824 – A3855.) That evidence included emails and other documents produced by Rutherford, ARG, Dynamic 3D and Austin Geo. (*See id.*)

That evening, ARG filed notices of appearance in addition to sworn and detailed declarations from Vella and Fischman. (A3347-50; A3356-76.) Vella affirmed that he decided to acquire the '319 Patent without input from Rutherford and that Rutherford never disclosed confidential Schlumberger information to him or others at Acacia. (A3373-74 ¶¶ 3-5.) Fischman declared that Rutherford never disclosed confidential Schlumberger information to him or others at Acacia. (A3375-76 ¶¶ 4-8.) Collins had also filed a declaration in opposition to the motion, confirming that he never discussed Schlumberger or Petrel with Rutherford. (A1444-45 ¶¶ 7-14.)

Counsel for ARG appeared at the November 20, 2014 hearing. (A3379.) Two minutes in, the presiding judge declared to all counsel present:

---

[4] Schlumberger's supplemental submission, filed one day before the hearing on its motion, also included copies of the privilege logs produced by Rutherford, ARG and Dynamic 3D. The District Court did not request any of the documents identified on those logs for *in camera* review. Therefore, those documents are not part of the record.

19

> I am not going to read everything you have given me. I will tell you that. When I get this much material on a motion to disqualify, I'm just not going to read it because, one, I don't have the time and, two, over 90 percent of it is unnecessary.

(A3381 ln. 7-11.)  The District Court contended that the parties' submissions were too voluminous, although it had permitted Schlumberger to file a motion, reply brief, and supplemental submission totaling at least 1,305 pages of briefing and evidence.  (A0701 – A1283; A1622 – 2194; A3158 – A3309; *see also* A3470 – A3823.) [5]

When ARG's counsel stood to be heard following the parties' presentations, the judge ordered him not to speak because all time for argument had already been allocated between Dynamic 3D and Schlumberger:

> MR. CONNOR:  Your Honor, if I may?
> THE COURT:  No.  You don't get to respond again.
>
> MR. CONNOR:  We're on behalf of nonparty Acacia Research Group.
> THE COURT:  I understand.  But I've heard from who I'm going to hear from today.  I don't need to hear anything                                        else.

(A3466 ln. 21-A3467 ln. 6.)  With that, the District Court took the motion under submission.  (A3468 ln. 21-23.)

---

[5] In contrast, ARG filed a 21-page Notice of Authority and Declarations" when it entered its appearance one day before the hearing.  (A3356-A3376.)

**On March 31, 2015, The District Court Grants Schlumberger's Motion Without Citing Any Evidence, Dismisses The Case, And Enters Judgment.**

The March 31, 2015 Order dismissed the case due to the District Court's holdings on the disqualification issues. (A0002-15.) The Order did not explain why dismissal was necessary or appropriate, or why other forms of relief would be insufficient. (*See id.*)

The District Court rejected Schlumberger's main argument concerning Acacia—that the law imposed an irrebuttable presumption that Rutherford shared relevant and confidential Schlumberger information with others at Acacia, thereby imputing Rutherford's alleged conflict. (A0008.) However, the District Court held that it "*must* determine whether Dynamic Geo can *rebut* any presumption that Rutherford shared the confidential information she acquired at Schlumberger based on the factual record before the court." (A0010 (emphasis added).) The District Court acknowledged that declarations from Vella and Fischman had been filed. (A0011.) Without citations to any evidence, the District Court incorrectly held the presumption unrebutted because:

- At the two meetings Austin Geo had with a group of ARG personnel "Rutherford confirmed that she did not excuse herself from either meeting even though Schlumberger and Petrel were discussed." (A0012.)

21

o This contradicts, without support, Rutherford's deposition testimony that she told the attendees at the Austin Geo meetings that she used to work for Schlumberger and could not discuss it, and, as a result, *Schlumberger and Petrel were not discussed at either meeting.* (A1428 ln. 14-25; A1429 ln. 18-24; A0759-60.)

- "Rutherford stated that she was presented with a PowerPoint presentation by Collins discussing Schlumberger, after which Rutherford approved the recommendations to acquire the '319 patent and to sue several companies, including Schlumberger." (A0012.)

  o This is at odds with Rutherford's testimony and Fischman's declaration that *Rutherford removed herself from the November 7, 2013 telephonic presentation*, which concluded with Vella's decision to acquire the '319 Patent, *before any discussion of Schlumberger.* (A1440 ¶ 6; A1389 ln. 10-19.)

  o This also contradicts, without support, the independent evidence that Fischman did not approach Collins Edmonds to potentially engage it for enforcement of the '319 Patent until

November 12, 2013, several days *after* ARG had already

decided to acquire the '319 Patent. (A1440 ¶ 9; A1443 ¶ 3.)[6]

- Rutherford "reviewed the '319 patent in anticipation of litigation,
  and… she and Fischman made the decision to retain Collins Edmonds
  as Dynamic Geo's counsel of record in all of the '319 patent
  litigation." and "received recommendations from Fischman and…
  Collins Edmonds that Acacia acquire and file suit against
  Schlumberger on the '319 patent." (A0012.)

  - This contradicts, without support, the documents and
    correspondence showing that Rutherford contributed nothing to
    preparation of the complaint against Schlumberger, which was
    unchanged in the few days between the time Fischman

---

[6] Collins and Fischman both verified under oath that Collins never made a
presentation involving Rutherford that resulted in decisions to acquire and enforce
the '319 Patent against Schlumberger. (A1440 ¶ 9; A1444-45 ¶ 9-10.) Indeed,
Collins could not have done so because his firm was not engaged until after ARG
had already decided to acquire the '319 Patent. Rutherford testified that she was
present for at least part of a "single presentation" concerning the '319 Patent, apart
from the two early meetings with Austin Geo, and that *she disconnected from that
call before Schlumberger was discussed*. The District Court's finding that
Rutherford "was presented with a PowerPoint presentation by Collins" appears to
rest on Rutherford's statement during her two-day deposition that "outside
counsel" was involved in the presentation. (A0012.) As described herein, that is
inconsistent with the large majority of Rutherford's own testimony, the
declarations of Fischman and Collins, and the undisputed timeline of ARG's
acquisition of the '319 Patent. In addition, the District Court's "finding" fails to
identify any transmission of confidential Schlumberger information to anyone else.

23

forwarded it to Rutherford and its filing.  (A3602; A3376 ¶ 7; A1422 ln. 1-17; A1444-45 ¶¶ 7-8, 13-14.)

o  This also improperly accepts Schlumberger's unsupported contentions that Rutherford's approval was needed to sue Schlumberger and that she contributed to preparation of the case simply because she, along with virtually every other ARG executive, was given standard notice of the suit before it was filed and an opportunity to register any potential business objection, and simply responded by pressing an electronic voting button labeled "I have no objection."  (A3595.)

o  Finally, and most significantly, this and the other "findings" quoted above, include no evidence of *Rutherford* communicating *any* confidential information about *Schlumberger* or *Petrel* to anyone.   (A1388 ln. 11-19; A3215-16;  A3218-19;  A3221;  A3223-24;  A3526-27;  A3530-31; A3533-34; A3536-37; A3830-31; A3833; A3835; A3837-40; A3842-44; A3846.)

The District Court did not explain why it assigned no weight to any of the sworn statements from four attorneys making clear that: Rutherford did *not* share confidential Schlumberger information, played no role in identifying potential

infringers or the acquisition due diligence, and contributed no information to preparation of the case against Schlumberger.  (A1440 ¶¶ 5-7; A3373-74 ¶¶ 3-5; A3375-76 ¶¶ 4-8.)  It did not reference any facts purporting to contradict those statements.  Yet the District Court concluded that Acacia and Dynamic 3D had "failed to rebut the presumption that Rutherford shared the confidential information she acquired from Schlumberger with Acacia's legal team." (A0012.)

## SUMMARY OF THE ARGUMENT

Seven of the District Court's errors led directly to the unjustified disqualification of "all in-house counsel of Acacia Research Corporation and its subsidiaries" and dismissal of the case. Each warrants reversal of the Order and Judgment.

*First*, the District Court refused ARG's request to be heard. Schlumberger filed 151 pages of supplemental briefing and evidence less than 24 hours before the hearing on its motion. That submission relied on previously un-submitted evidence produced by ARG and other third parties in response to Schlumberger's subpoenas, but the District Court refused ARG's attempt to be heard in response, denying ARG's due process rights.

*Second*, in considering a motion to disqualify every attorney at a firm, the Fifth Circuit applies a "balancing approach" that accounts for equitable factors such as harm resulting from such disqualification, but the District Court did not employ this approach. This contrasts significantly with the Hon. Sam Sparks' opinion in *Nat'l Oilwell Varco, LP v. Omron Oilfield & Marine*, 60 F. Supp. 3d 751, 766 (W.D. Tex. 2014). There the same District Court emphasized the importance of this "balancing approach" and applied the controlling standards articulated in *Kennedy v. MindPrint (In re ProEducation Int'l, Inc.)*, 587 F.3d 296, 299-300 (5th Cir. 2009) and *In re DataTreasury Corp.*, No. 2010-M928, 2010 U.S.

26

App. LEXIS 16631 (Aug. 5, 2010) *8-*9 (applying Fifth Circuit law) to deny a motion to disqualify an entire firm.

The disqualification of all Acacia "in-house counsel" and the unprecedented dismissal prejudice Acacia.  Acacia and its subsidiaries license technology that they own or control.  By ordering such sweeping disqualification and unnecessarily dismissing the case, the District Court prohibited *all* of ARG's licensing executives from guiding its subsidiary's enforcement effort against Schlumberger and effectively gave Schlumberger an unpaid license to infringe the '319 Patent.  Never before has a Fifth Circuit court granted such relief, and Schlumberger will undoubtedly try to use this extreme result to seek similar "immunity" in any licensing efforts by other Acacia licensing entities.  Yet the District Court did not explain why relief short of dismissal, such as a short stay of the action pending retention of new counsel, would be insufficient, or what potential harm to Schlumberger justified the result.

*Third*, the District Court failed to apply controlling precedent regarding whether one attorney's personal conflict should be presumptively imputed to other attorneys.  The Fifth Circuit has rejected application of an irrebuttable presumption that an attorney shared a former client's confidential information with colleagues. It has expressly declined to require a rebuttable presumption to that effect and agrees that the Texas Rules of Disciplinary Conduct "reflect[] a desire within the

legal profession to eliminate or restrict imputed disqualification." *ProEducation*, 587 F.3d at 304 n. 6 quoting Burton, *infra*, at 688 n. 79. Still, the District Court incorrectly found that it "must" apply a rebuttable presumption that Rutherford shared confidential Schlumberger information with others at Acacia.

*Fourth*, the District Court incorrectly deemed its recitation of "facts," without citations to evidence, legally sufficient to hold that Rutherford shared relevant, confidential Schlumberger information with others at Acacia. As described below, those "facts" directly contradict the actual evidence, but even if they were true, they do not involve Rutherford's communication of any such information. They only suggest that Rutherford attended two meetings where Schlumberger was mentioned by others and a presentation made to Acacia's CEO in which Schlumberger was mentioned by others and agreed with the decisions of others to acquire and enforce the '319 Patent. Under controlling precedent, the District Court was required to base its conclusion on evidence. Instead, the District Court rested its decision on a *suspicion* that Rutherford shared confidential Schlumberger information that did not have any basis in the evidentiary record.

*Fifth*, even if a rebuttable presumption that Rutherford shared confidential Schlumberger information with Acacia were appropriate, the District Court failed to apply the parties' respective burdens of proof. The District Court imposed more than a rebuttal burden on Acacia and did not hold Schlumberger to its ultimate

28

burden of persuasion. The record contains sworn deposition testimony from Rutherford and declarations from three other attorneys, including two submitted by ARG, which all confirm that Rutherford never shared confidential Schlumberger information. The District Court, without explanation, gave no weight to this evidence and improperly relieved Schlumberger from confronting it. Neither Schlumberger nor the District Court identified evidence that contradicts these four sworn statements. There is none.

*Sixth*, the District Court incorrectly found that a presumption of shared confidences between Rutherford and others at Acacia had not been rebutted. The District Court failed to make any actual findings of fact. The few paragraphs entitled "Background" in the Order, and the two paragraphs of "Analysis" resulting in Acacia's disqualification, contain not a single "finding," nor do they cite any evidence, despite an ample record.

This Court's *de novo* review of the record is necessary given the District Court's admitted failure to do it. The District Court's "Analysis" with respect to Acacia contradicts the evidence in significant but basic respects. The Order states that Rutherford failed to recuse herself from two meetings at which Schlumberger was discussed. This contradicts Rutherford's actual sworn deposition testimony that Schlumberger was *not* discussed at those meetings *because she told the other attendees that she could not discuss Schlumberger*. The Order states that

29

Rutherford attended a conference call presentation in which Schlumberger was discussed. This also contradicts Rutherford's sworn deposition testimony, and Fischman's sworn declaration, that *Rutherford dropped off the call before Schlumberger was to be discussed.* There is no evidence to the contrary. None.

The Order disregards more sworn statements. ARG's President (and non-practicing attorney) Matthew Vella, who is also ARC's CEO and made the decision to acquire the '319 Patent, and Fischman both submitted detailed declarations stating, among other things, that Rutherford *never* disclosed confidential Schlumberger information to them or others at Acacia. Michael Collins, lead outside counsel for Dynamic 3D, also declared under oath that Rutherford never disclosed confidential Schlumberger information to him and that he did not discuss Schlumberger with Rutherford. In another significant departure from *Nat'l Oilwell*, in which the District Court denied a motion to disqualify a law firm based in large part on similar statements under oath from four attorneys, the District Court here gave the attorneys' sworn statements no weight. Any presumption of shared confidences was rebutted by this evidence, which is also un-contradicted.

*Seventh* and finally, the evidence as to the relevant question—whether Rutherford shared confidential Schlumberger information—shows that she did not,

30

as described above.  The District Court's "finding" to the contrary is erroneous under any standard of review.

For these reasons, Acacia respectfully requests that this Court reverse the Order and Judgment.

## ARGUMENT

## I.    CONTROLLING    LAW    AND    STANDARD    OF    REVIEW

This appeal "does not raise issues unique to [the Federal Circuit's] jurisdiction," so this Court is to apply "the law of the regional circuit in which the District Court sits, in this case the law of the Fifth Circuit." *In re Data Treasury Corp.*, Case No. 2010-M928, 2010 U.S. App. LEXIS 16631, at *5 (Fed. Cir. Aug. 5, 2010) (applying Fifth Circuit law to petition for writ of mandamus concerning an order disqualifying law firm).

As a general matter, "a District Court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United States v. Mann*, 161 F.3d 840, 860 (5th Cir. 1998).  These standards govern a motion to disqualify counsel:  "The proper standard of review… is an abuse of discretion standard.  But in applying this standard, we will review fact-findings for clear error, and we will perform a 'careful examination,' or *de novo* review, of the District Court's application of the relevant rules of attorney conduct."  *FDIC v. United States Fire Ins. Co.*, 50 F.3d 1304, 1311 (5th Cir. 1995) (appeal from disqualification order).

On questions of fact, however, "[i]f the District Court does not make specific findings of fact . . . [this Court] may make determinations based upon [its] own [*de novo*] review of the record or remand for the District Court to make such

findings." *Hardison v. Abdon Callais Offshore, LLC*, 551 Fed. App'x 735, 739 (5th Cir. 2013) (citing *Borne v. A & P Boat Rentals No. 4,* 780 F.2d 1254, 1257 (5th Cir. 1986)). *Cf. ACS Hospital Sys., Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1578 (Fed. Cir. 1984), *overruled on separate grounds by McNeil-PPC, Inc. v. Perrigo Co.*, 516 F. Supp. 2d 238 (S.D.N.Y. 2007).

Here, the Court must undertake *de novo* review of the questions of law identified as Issues 1, 2, 3, 4 and 5 herein.  The Court should also review the questions identified as Issues 6 and 7 herein *de novo* because the District Court admitted it would not review the whole record and did not make specific findings of fact.  The District Court's determinations that are the subject of Issues 6 and 7 also constitute clear error.

## II.    THE DISTRICT COURT DENIED ARG'S DUE PROCESS RIGHTS IN REFUSING TO HEAR FROM IT.

### A.    As A Target Of Disqualification, ARG Had A Right To Be Heard.

Schlumberger sought to disqualify, among others, all "in-house counsel for Acacia Research Corporation and its subsidiaries," which includes ARG.  (A0707.) Given that ARG had a "personal stake in the outcome," it had a right to be heard and has standing to bring this appeal.  *EEOC v. Louisiana Office of Comm. Servs.*, 47 F.3d 1438, 1442 (5th Cir. 1995) (non-parties have standing to appeal where the non-party "participated in the proceedings below" and where "the non-parties have a personal stake in the outcome") (citing, *inter alia*, *Binker v. Pennsylvania*, 977

33

F.2d 738 (3d Cir.1992) and *EEOC v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1504 (9th Cir. 1990)).

Indeed, "[t]he essential requirements of due process . . . are notice and an opportunity to respond.  The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."  *Stone v. FDIC*, 179 F.3d 1368, 1375-76 (Fed. Cir. 1999) (petitioner's due process rights were violated where opposing counsel's *ex parte* communication might have undermined petitioner's right to meaningful notice and a meaningful opportunity to respond); *see also In re Trans Texas Holdings Corp.*, 498 F.3d 1290, 1297 (Fed. Cir. 2007) (the United States Patent and Trademark Office was not bound by a claim construction rendered in an earlier infringement proceeding to which it was not a party and had no "full and fair opportunity" to litigate the issue in the earlier matter) (citing *Allen v. McCurry*, 449 U.S. 90, 95 (1980) and *In re Freeman*, 30 F.3d 1459, 1467 (Fed. Cir. 1994)).

At a minimum, ARG was entitled to a "full and fair opportunity" to respond to Schlumberger's demand that all of its attorney-employees be disqualified. *Texas Holdings Corp.*, 498 F.3d at 1297.  Instead, although ARG appeared for the purpose of responding to Schlumberger's motion and supplemental submission, the District Court then affirmatively blocked ARG's attempt to be heard.  (A3466 ln. 21 – A3467 ln. 6.)

34

**B.    The District Court Prevented ARG From Being Heard Less Than 24 Hours After Permitting Schlumberger To File 151 Pages Of More Briefing And Evidence.**

Due process guarantees fair notice *and* an opportunity to respond. For example, in *Stone*, this Court vacated the final decision of the Merit Systems Protection Board ("Board") sustaining Stone's removal from his position as a bank examiner at the Federal Deposit Insurance Corporation ("FDIC"). *Stone*, 179 F.3d at 1371. After filing his appeal, Stone requested additional documents relating to the matter and discovered that the Board considered *ex parte* communications from the other side recommending Stone's removal. *Id*. at 1372-73. The *ex parte* communications included "new, highly prejudicial, and unchallenged charges and information against [Stone]" and the Court agreed that they violated Stone's right to due process. *Id*. at 1373. The Court held that "[t]he introduction of new and material information by means of *ex parte* communications to the deciding official undermines the . . . constitutional due process guarantee of notice . . . and the opportunity to respond." *Id*. at 1376.

The circumstances here are akin to *Stone* for at least two reasons. First, Schlumberger's supplemental submission reflected "new, highly prejudicial, and unchallenged charges and information against" Acacia that Acacia ultimately had *no* opportunity to address. *Stone*, 179 F.3d at 1373. (*See* A3466 ln. 21 – A3467 ln. 6.) Schlumberger argued in its supplemental submission that, among other things,

35

Rutherford shared confidential Schlumberger information with Acacia as a factual matter, relying on new evidence produced by ARG and others. (A3160.) In the Order, the District Court accepted Schlumberger's incorrect characterizations of evidence after denying ARG's attempt to address Schlumberger's arguments and evidence at the hearing. (A0010-12.) Second, the filing of the 151-paqe supplemental submission less than 24 hours before the hearing also deprived Acacia of the due process guarantee of reasonable notice under the circumstances. (A3158-3309.)

The prejudice resulting from an *ex parte* submission is no different than that resulting from a District Court's active denial of a litigant's attempt to respond to an unduly late submission. In either case, due process is denied because the interested litigant is *denied* its opportunity to be heard. Had it not been silenced at the hearing, ARG would have addressed Schlumberger's mischaracterizations of evidence that ARG and others had produced, explained the legal significance of the sworn statements by its own employees and of the complete absence of contradictory evidence, described the particular prejudice it would face if its entire team of licensing executives were disqualified, and enumerated the reasons particular to ARG why no presumption of imputed conflict applies to those licensing executives. The Order should be reversed.

## III.  THE DISTRICT COURT FAILED  TO APPLY THE FIFTH CIRCUIT'S "BALANCING APPROACH."

### A.  Controlling Precedent Balances Equitable Factors, Including Prejudice Resulting From Disqualification Of An Entire Company's "In-House Counsel."

As this Court has already recognized, "[t]he Fifth Circuit has on multiple occasions conducted a … balancing analysis after reaching the conclusion that the substantial relationship test had been met." *In re DataTreasury Corp.*, 2010 U.S. App. LEXIS 16631, at *7 (citing *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1348 (5th Cir. 1981) and *United States v. Kitchin*, 592 F.2d 900 (5th Cir. 1979)).  "In addition to the factual record, the Court weighs equitable factors" such as present counsel's length of involvement and "familiarity with the issues in the case," "the cost of retaining new counsel" for the non-moving party, the nature of the personally conflicted attorney's "representation of" the former client, and the non-moving party's "potential loss of its right to counsel of choice." *Nat'l Oilwell*, 60 F. Supp. 3d at 766 (citing *DataTreasury*, 2010 U.S. App. LEXIS 16631, at *1).  In *DataTreasury*, this Court refused to overturn an order denying a motion to disqualify an entire law firm because the movant "had failed to show [that] any harm it might suffer outweighed the harm [the opposing party] would incur if [its law firm] were disqualified." *Id.*

The District Court has previously found this "balancing approach to be the most prudent under Fifth Circuit guidance as a whole." *Id.* at 766 (citing *United*

37

*States Fire*, 50 F.3d at 1313; *Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526, 530 (5th Cir. 1981), *disavowed on other grounds by Gibbs v. Paluk*, 742 F.2d 181, 185 (5th Cir. 1984); and *Woods v. Covington County Bank*, 537 F.2d 804, 813 (5th Cir. 1976)).

### B.    The Order Seriously Impairs The Property Rights Of Acacia And Its Subsidiaries Without Justification.

Here, the District Court's "analysis" improperly ended with its "examination of the facts" concerning whether Rutherford shared confidential Schlumberger information. *Id.* As explained in Section VII.D, below, the District Court found, contrary to the actual evidence, that "the factual record before the court … showed that Dynamic Geo has failed to rebut the presumption that Rutherford shared the confidential information she acquired from Schlumberger with Acacia's legal team." (A0012.) On that basis, the District Court "disqualif[ied] all inhouse counsel for Acacia and its subsidiaries," dismissed the case outright, and entered judgment in favor of Schlumberger (*Id.*) The District Court did not acknowledge or apply the balancing approach that is "most prudent under Fifth Circuit guidance." *Nat'l Oilwell*, 60 F. Supp. 3d at 766. This extreme result is an unjustified limitation on the right of Acacia or its subsidiaries to enforce patent rights that they own or control.

"The [Fifth and] Fourteenth Amendment[s'] procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Stone*, 179 F.3d at 1374 (Fed. Cir. 1999) (citing *Board of Regents v. Roth*, 408 U.S. 564, 576 (1972)); *see also Cushman v. Shinseki*, 576 F.3d 1290, 1298-99 (Fed. Cir. 2009). Acacia's subsidiaries' hold property interests in the '319 Patent and other patents and cannot be deprived of that interest without due process. *See, e.g., Stone*, 179 F.3d at 1374. It is well-settled that a patent holder has "the right to exclude others from making, using, and selling the invention and to enforce those rights until the [patent is] held invalid [or expires]." *Concrete Unlimited Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed. Cir. 1985); *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1372 (Fed. Cir. 2003).

The sweeping breadth of the Order bars Gary Fischman from the case *and* prohibits his replacement by another ARG licensing executive. (A0014-15.) The necessary effect is that Acacia and its subsidiaries are left with property rights—the '319 Patent—that they are barred, or seriously impaired, from enforcing against Schlumberger no matter what Schlumberger does. Of course, this is precisely what Schlumberger had in mind, as its lead counsel conceded at the hearing: "[T]here is no scenario that I can envision as I sit here today that Acacia, as the current owner

or assignee of the patent, could assert this patent against Schlumberger at all, including if Ms. Rutherford left the company." (A3394 ln. 14-18.)

No legal authority supports this result. The District Court did not cite any authority in dismissing the case. (*See* A0002-A00015.) Schlumberger offered no authority justifying dismissal. (*See* A0701-A1283; A1622-A2194.) The authority it did cite only helps demonstrate Acacia's point because it actually *upholds* the ability of a litigant to enforce its *own* rights. (A0736 (citing *Doe v. A Corp.*, 709 F.2d 1043, 1051 (5th Cir. 1995) (reversing order dismissing the plaintiff's individual action).) The Order is broad enough that Schlumberger will almost certainly attempt to use the result to try and bar *any* infringement case filed by Acacia or its subsidiaries. Put another way, Schlumberger has effectively won an injunction against Acacia and its subsidiaries from suing it for infringement of the '319 Patent, without any justification, and received a roadmap, albeit a very flawed one, for seeking similar relief in any future licensing disputes. The Order should be reversed for this reason alone.

LITIOC/2123207v2/101022-0109

## IV. THE DISTRICT COURT INCORRECTLY HELD THAT IT "MUST" PRESUME THAT RUTHERFORD SHARED CONFIDENTIAL SCHLUMBERGER INFORMATION WITH ACACIA "IN-HOUSE COUNSEL."

### A. The Fifth Circuit Has Embraced A Trend To "Eliminate Or Restrict Imputed Disqualification."

"Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992) (citation omitted). While a court is obligated to take reasonable measures against unethical conduct, "[d]epriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." *In re ProEducation Intern., Inc.* 587 F.3d 296, 300 (5th Cir. 2009) (quoting *FDIC v. United States Fire Ins. Co.*, 50 F.3d 1304, 1313 (5th Cir. 1995)). "Because of the severity of disqualification, we do not apply disqualification rules 'mechanically,' but we consider '[a]ll of the facts particular to [the] case … in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *Id.* (quoting *United States Fire Ins.*, 50 F.3d at 1313.)

With these principles in mind, "courts should first look to 'the local rules promulgated by the local court itself.'" *ProEducation,* 587 F.3d at 299 (quoting *United States Fire Ins*, 50 F.3d at 1312). The Local Rules of the Western District of Texas provide that attorneys "must comply with the standards of professional

41

conduct set out in the Texas Disciplinary Rules of Professional Conduct." Local Rule AT-7(a). "The current version of the Texas Rules reflects a desire within the legal profession to eliminate or restrict the scope of imputed disqualification" of lawyers who did not personally represent the party moving for disqualification. *ProEducation*, 587 F.3d at 304 n. 6. (citing Amon Burton, *Migratory Lawyers and Imputed Conflicts of Interest*, 16 Rev. Litig. 666, 690 n. 87 (1997)). "This desire is due in large part to the development of lateral movement in the legal profession" over the last several decades. *Id*. 16 Rev. Litig. 666, 666 n.2.

Disqualification of an attorney arising from her personal prior representation may be warranted only upon satisfaction of the intensely factual "substantial relationship" test:

> A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) *a substantial relationship between the subject matter of the former and present representations*.

*In re American Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992) (emphasis added) (citations omitted). The moving party bears the burden of persuasion. *See id*.

The finding of a "substantial relationship" is necessary, but not sufficient, to conclude that the conflict of an attorney that personally represented the former client may be spread to other attorneys who did not. *ProEducation*, 587 F.3d at 301. Confidential information obtained from the former client must have been

42

disclosed to such other attorneys before they may be deemed conflicted. Texas Rule 1.09(b) and ABA Model Rule 1.9(b)[7] "produce the same result in application—they both require that a... lawyer *must have actually acquired confidential information* about the former… client" of another attorney. *Id.* *Compare* Model Rules of Prof'l Conduct R. 1.9(b) (2006) and Tex. Disciplinary R. Prof'l Conduct 1.09, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G, app. A, art. 10, § 9 (Vernon 2005).

### B. The Fifth Circuit Rejects An Irrebuttable Presumption And Has Expressly Left Open The Necessity Of A Rebuttable Presumption.

If a court finds a "substantial relationship" between a prior matter and a present one, it "will irrebuttably presume that relevant confidential information was disclosed [to the former client's attorney] during the former period of representation." *Nat'l Oilwell*, 60 F. Supp. 3d at 760. However, the Fifth Circuit does *not* irrebuttably presume that such attorney shared such information with other attorneys. In *ProEducation*, the Fifth Circuit held such a presumption is improper.

---

[7] The Texas Rules "are not the sole authority governing a motion to disqualify." *ProEducation*, 587 F.3d at 299 (quoting *In re American Airlines, Inc.*, 972 F.2d at 610). Courts also "consider the motion governed by the ethical rules announced by the national profession in light of the public interest and the litigants' rights." *Id.* "Precedents have applied the ethical canons contained in the ABA Model Code." *American Airlines*, 972 F.2d at 610 (citing *Dresser*, 972 F.2d at 943)).

In *ProEducation*, the movant, Mindprint, sought to disqualify Kennedy, in-house counsel for a medical center, from representing the medical center's director in adversary litigation in a bankruptcy proceeding.  Kennedy was formerly an associate in the bankruptcy section at the law firm Jackson Walker, LLP.  Schooler, a partner in the bankruptcy section at Jackson Walker, represented Mindprint in the bankruptcy litigation.  The bankruptcy court (whose ruling the district court adopted) relied on the Fifth Circuit's decision in *American Airlines* to apply "an *irrebuttable* presumption that 'confidences obtained by an individual lawyer will be shared with other members of his firm.'"  *Id.* at 303.  On that basis, the District Court disqualified Kennedy despite Kennedy's sworn testimony that he had not personally represented Mindprint and had not obtained any confidential Mindprint information by virtue of his employment at Jackson Walker.

The Fifth Circuit reversed.  With respect to whether there is an "irrebutable presumption" that a lawyer shares a client's confidential information with other members of his firm, the court held that "the *American Airlines* case did not actually involve or apply this presumption, so any statements regarding the presumption are dicta."  *Id.* (citing *American Airlines*, 972 F.2d at 614 n. 1).  The court held that the Texas Rules enacted in 1990 "changed the landscape of the jurisprudence and gave migrating attorneys the opportunity to remove imputed disqualification."  *Id.* at 304.

44

In light of these considerations, *ProEducation* concluded that the attorney who had not personally represented the former client "should have the opportunity to demonstrate that he did not obtain confidential information regarding" the former client. *Id.* The court found that Kennedy had made such a demonstration through his sworn testimony and other evidence, and that the movant "did not present any evidence to contradict Kennedy's testimony." *Id.* at 303-04. Accordingly, Kennedy's representation of a party adverse to Mindprint in the bankruptcy litigation "did not present a conflict of interest requiring his disqualification." *Id.* at 304.

The Fifth Circuit said it was "unclear whether a rebuttable presumption replaces the *American Airlines* irrebuttable presumption, or whether no presumption remains." *Id.* at 304 n.7. The court did "not reach this question, as Kennedy provided uncontroverted evidence that" he had not received confidential Mindprint information. *Id.* Kennedy's evidence "suffice[d] to remove the imputed conflict of interest regardless of whether a rebuttable presumption remains." *Id.* (citing *Jack Cole Co. v. Hudson*, 409 F.2d 188, 192 (5th Cir. 1969) (noting that a presumption will disappear if clear and undisputed evidence to the contrary is presented); *see also Bonilla-Torres v. Wal-Mart Transp. LLC*, 309 Fed. App'x 882, 883 (5th Cir. 1969) (per curiam) (citing *Jack Cole* for proposition that un-

45

contradicted testimony suffices to rebut presumption outside conflict-of-interest context).

In November 2014, the Hon. Sam Sarks, in a decision published by the District Court shortly before the hearing on Schlumberger's motion, applied *ProEducation* in a case with facts more analogous to those here. The movant, Omron, sought to disqualify all attorneys at the Raley & Bowick law firm by imputing the alleged conflict of a colleague of theirs, Wunder, who *had* personally represented Omron in a substantially related matter when working at a different firm. *See Nat'l Oilwell*, 60 F. Supp. 3d at 765. The District Court recognized that the alleged point of imputation differed from that in *ProEducation*—where the attorney switching firms was himself alleged to have an imputed, rather than personal, conflict—but held that *ProEducation*'s rationale concerning the impropriety of irrebuttably presuming sharing of client confidences still governed: Following *ProEducation*, such an "irrebuttable presumption … is not the law in this circuit." *Id*. at 765.

## C.    The Order Is Inconsistent With Controlling Precedent.

The District Court held that it "*must* determine whether Dynamic Geo can rebut any presumption that Rutherford shared the confidential information she acquired at Schlumberger." (A0010 (emphasis added).)    This contradicts

46

*ProEducation*, which ruled out an irrebuttable presumption but questioned, without deciding, whether *any* presumption is appropriate.  *See id.*

Post-*ProEducation*, the Order stands alone as erroneous, as demonstrated by the results of other Texas District Courts considering the same issues.  Such courts applying *ProEducation* have twice denied motions to disqualify an entire law firm because the evidence indicated that the attorney with a personal conflict did not share confidential information of a former client or because equitable factors weighed against disqualification under the Fifth Circuit's "balancing approach." This Court explained its refusal to issue a writ of mandamus sought after one of those decisions.  *See In re Data Treasury Corp.*, 2010-M928, 2010 U.S. App. LEXIS 16631, at *5-9 (Fed. Cir. Aug. 5, 2010) (writ requested following order by Eastern District of Texas).  The other decision was *Nat'l Oilwell*.  *See Nat'l Oilwell*, 60 F. Supp. 3d at 769 (denying motion to disqualify law firm without deciding whether a rebuttable presumption applies).  The Order is the only instance in which a Texas U.S. district court has granted such a motion post-*ProEducation*.

## D. No Presumption Applies Here Because None Of Acacia's "In-House Counsel" Worked For Schlumberger Or A Firm That Did.

The issue of whether a rebuttable presumption replaces the irrebuttable presumption pre-dating *ProEducation* is a question of federal law that the Fifth

Circuit has expressly left open.[8]  In analyzing whether imputation should initially be presumed here, the Court must account for the unique circumstances present. "When dealing with ethical principles … we cannot paint with broad strokes.  The lines are fine and must be so marked.  Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent." *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168,173-74 (5th Cir. 1979) (quoting *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 (2d Cir. 1977)).  No Fifth Circuit court has presumptively imputed a conflict between "in-house counsel." The Court should not do so here.

As this Court has already observed, older Fifth Circuit decisions distinguished in *ProEducation*, such as *Corrugated Container*, found justification for a robust, and often unassailable, presumption of conflicts of interest in "the now defunct 'appearance of impropriety' ethics canon." *DataTreasury*, 2010 U.S. App. LEXIS 16631, at *8.  In *American Airlines*, the Fifth Circuit affirmed an irrebuttable presumption that an attorney that personally represented the former client in a substantially related mater was still irrebuttably presumed to possess

---

[8] Texas law is inapplicable because "[m]otions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992) (citing *Woods v. Covington County. Bank*, 537 F.2d 804, 810 (5th Cir. 1976)); *see also Nat'l Oilwell*, 60 F. Supp. 3d at 767 n. 11.

48

relevant, confidential information of that former client because "the replacement of the 'appearance of impropriety' with [duty of] loyalty provides no basis for altering the substantial relationship test found in our precedents." *Id*. (quoting *Am. Airlines*, 972 F.2d at 618).  However the *American Airlines* holding speaks solely to the inquiry concerning disqualification of an attorney that personally represented the movant.  *American Airlines*, 972 F.2d at 618 (irrebuttable presumption that attorney possesses client confidences is necessary because "[o]nly in this manner can the lawyer's duty of absolute *fidelity* be enforced and the spirit of the rule relating to privileged communications be maintained") (emphasis added).  Attorneys who never represented the movant, and never worked for a firm that did, do not carry such a "duty of fidelity" to the movant.  *Id.*

In *ProEducation*, the Fifth Circuit declined to hold whether a rebuttable presumption is necessary in a case where the only potential conflict could exist through imputation to an attorney while he had actually worked for a firm that represented his client's adversary.  That attorney was capable of bearing some appearance of disloyalty by virtue of his "former association" with that firm, which could at least plausibly justify a rebuttable presumption of conflicting interests. *ProEducation*, 587 F.3d at 302 (quoting Burton, at 703).

Here, Schlumberger seeks to impute Rutherford's conflict to a group of corporate executives who are attorneys but who never worked for Schlumberger or

49

a firm that represented it in a "substantially related" matter.  (A0707.)  Those individuals could not bear even the *appearance* of disloyalty to Schlumberger, so there is no reason for *any* presumption that they have a conflict of interest.  The circumstances warrant a test analogous to that used to determine whether a conflict should be imputed to an attorney's "co-counsel," where "[i]n the absence of an attorney-client relationship between [the attorney for whom disqualification is sought] and [movant], a presumption of disclosure of confidences is *inappropriate*" and actual proof of such disclosure is necessary.  *Brennan's*, 590 F.2d at 174 (citing *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977) (vacating order disqualifying counsel based on imputation of co-counsel's conflict) (emphasis added).

The only relevant inquiry is whether Acacia's "in-house counsel" actually received confidential and relevant Schlumberger information from Rutherford.  Presuming they did at the outset of the analysis unduly burdens the right to select counsel, which the Fifth Circuit places a high value on.  *See ProEducation*, 587 F.3d at 300.  That burden is particularly high here because disqualification of the targeted group—ARG's entire team of licensing executives—would result in the loss or severe impairment of ARG and its subsidiaries abilities to enforce rights in the '319 Patent.  In other words, the Order results in forfeiture of property rights.  Applying a rebuttable presumption here would constitute the type of "mechanical"

50

approach the Fifth Circuit rejects and would result in undue prejudice. *Id.* (quoting *United States Fire*, 50 F.3d at 1313). *Cf. Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 135 (2d Cir. 2005) (rebuttable presumption of shared confidences improper given nature of attorney's "of counsel" relationship to law firm and consequences of law firm's disqualification).

In *ProEducation*, the Fifth Circuit placed significant emphasis on the increased frequency of lateral movement in the legal profession over the past several decades in holding that an attorney who had formerly worked at the firm representing his adversary must be permitted to rebut a presumed conflict. It also stressed the importance of weighing harm that may result from disqualification of an entire firm. Given this emphasis on litigants' rights in an era of more attorney mobility, and the fact that the attorneys targeted here include all potential "in-house counsel" to Acacia licensing subsidiaries, a presumption, even a rebuttable one, that an attorney without any personal nexus to the party seeking disqualification has a conflict of interest is "inappropriate." *Brennan's*, 590 F.2d at 174; *see also Hempstead*, 409 F.3d at 136. The Order should be reversed.

## V.  THE DISTRICT COURT'S "FINDINGS" ARE LEGALLY INSUFFICIENT TO SUPPORT DISQUALIFICATION OF ACACIA'S "IN-HOUSE COUNSEL."

Assuming, *arguendo*, that the District Court had made adequate and accurate findings, the legal sufficiency of such findings—whether they justify

51

disqualification of all Acacia "in-house counsel"—is subject to *de novo* review. *See, e.g.*, *United States v. Butler*, 637 F.3d 519, 521 (5th Cir. 2011) ("Generally, a challenge to the legal sufficiency of an undisputed factual basis . . . is a straightforward question of law, reviewed *de novo*.")

The Order purports to disqualify "all in-house counsel for Acacia and its subsidiaries" based on "the factual record." (A0012.) The record includes sworn statements from four witnesses with personal knowledge all attesting how Rutherford did not share any "confidential information she acquired from Schlumberger with Acacia's legal team." (*Id.*) Disqualification of Acacia required "evidence to contradict" this "testimony." *ProEducation*, 587 F.3d at 303. The District Court's "findings" are legally deficient because they do not concern Rutherford communicating Schlumberger information to anyone, let alone confidential Schlumberger information relevant to Dynamic 3D's infringement claim. (*See* A0009-14.)

First, the District Court stated that Rutherford "participated in two meetings with the named inventors of the '319 patent for the purpose of assessing whether Acacia should acquire the patent for possible assertion against companies in the energy market," "[o]ther members of Acacia's legal and engineering departments were present," and "Schlumberger's Petrel product was discussed and identified as a potential target for assertion of the '319 Patent." (A0012.) The District Court

did not find that Rutherford communicated anything to anyone at either meeting, let alone whether Rutherford communicated any information specific to Schlumberger and whether such information was confidential information she had received from Schlumberger.  (*See id.*)

Second, the District Court stated that Rutherford "reviewed the '319 patent in anticipation of litigation, and that she and Fischman made the decision to retain Collins Edmonds as Dynamic Geo's counsel of record in all of the '319 patent litigation." (A0012.)  Again, there is no finding that Rutherford communicated any information specific to Schlumberger and whether it was confidential information received from Schlumberger.  (*See id.*)

Third and last, the District Court stated that Rutherford "was presented with a PowerPoint presentation by Collins discussing Schlumberger, after which Rutherford approved the recommendations to acquire the '319 patent and to sue several companies, including Schlumberger." (A0012.)  This is more of the same; there are no facts showing that Rutherford communicated confidential information that she received from Schlumberger.  (*See id.*)  The Order should be reversed.

## VI. THE DISTRICT COURT FAILED TO APPLY THE PARTIES' RESPECTIVE BURDENS OF PROOF.

### A. Acacia Had Only A Rebuttal Burden Of Production And The Ultimate Burden Of Persuasion Was To Remain With Schlumberger.

The Fifth Circuit, like the Federal Circuit, employs burden shifting in analyzing questions that begin with a rebuttable presumption. The burden on the party opposing the relief sought is only one of *production*, *i.e.*, that party need only produce evidence capable of rebutting the initial presumption. The burden of *persuasion*—which requires discrediting or overcoming rebuttal evidence to prove the case by a preponderance of the evidence—remains with the movant. *See, e.g.*, *Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 1391 (Fed. Cir. 2010) (non-use of a trademark for three consecutive years gives rise to a rebuttable presumption that the owner has intentionally abandoned the mark; following the owner's production of evidence that he used the mark or intended to resume use, the burden of persuasion remains with the challenger); *On-Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000) (same). *Cf. Hervey v. Miss. Dep't of Educ.*, 404 Fed. App'x 865, 868 (5th Cir. 2010) (the employee gains a presumption of unlawful discrimination by showing a *prima facie* case, but retains the burden of persuasion following the employer's production of rebuttal evidence); *Moore v. Honeywell Int'l, Inc.*, 159 Fed. App'x 566, 568 (5th Cir. 2005) (same).

54

*Nat'l Oilwell* demonstrates how the burden of persuasion remains with a party moving for disqualification of a law firm.  There, the District Court said "it is Omron's [the movant's] burden to show why disqualification [of all Raley & Bowick attorneys], a severe remedy, is called for in these circumstances," which included attorneys' sworn statements denying sharing of confidential information.  *Nat'l Oilwell*, 60 F. Supp. 3d at 769.  Raley & Bowick satisfied its burden of production by submitting sworn statements from four attorneys denying that the personally conflicted attorney had shared Omron's confidential information with them.  *Id*. at 767.  It then became "Omron's task [to] disput[e] this factual record." *Id*.; *see also ProEducation* at 587 F.3d at 304 n.7 (moving party required to contradict evidence that confidences were not shared).  Similar to Mindprint in *ProEducation*, Omron failed because it had no evidence contradicting the sworn statements and "simply never explain[ed] to the Court which specific piece of confidential information could lead to what specific harm."  *Nat'l Oilwell*, 60 F. Supp. 3d at 769.

### B.    In Failing To Allocate Evidentiary Burdens Properly, The District Court Used Something More Than A Rebuttable Presumption.

Here, the District Court incorrectly imposed burdens of production *and* persuasion on Acacia and Dynamic 3D:

> Dynamic Geo has submitted the declarations of Mr. Matthew Vella, President and CEO of Acacia and Mr.

> Gary Fischman, Vice President, Licensing, of Acacia,[9] both of whom assert that Rutherford has not provided confidential or proprietary information of Schlumberger or any of its products and technology, including Petrel, to anyone at Acacia or its affiliates. However, evidence regarding Rutherford's involvement in the acquisition of the '319 patent, the decision to sue Schlumberger, and the hiring of Collins Edmonds demonstrates otherwise. *Dynamic Geo argues that such evidence is conclusory at best. The court disagrees*."

(A0011 (emphasis added).)

*Schlumberger's* "task" was "[to] disput[e]" the "factual record" created by Vella and Fischman's sworn statements. *ProEducation*, 587 F.3d at 299-300, 303-04; *Nat'l Oilwell*, 60 F. Supp. 3d at 767. The District Court did not explain how any of the "evidence" it described contradicted those statements. (*See* A0002-15.) In fact, none of this purported "evidence" had anything to do with whether Rutherford shared confidential Schlumberger information. Instead, the District Court improperly relieved Schlumberger of its burden to explain why some evidence actually "contradict[s] the testimony" of Vella and Fischman. *ProEducation*. at 303-04. Like Mindprint and Omron, Schlumberger also never "explain[ed] to the Court which specific piece of confidential information could lead to what specific harm." *Nat'l Oilwell*, 60 F. Supp. 3d at 769. Indeed, it could not do so because the District Court only irrebuttably presumed, and never found, that Rutherford obtained relevant and confidential information in the first place.

---

[9] ARG, not Dynamic 3D, submitted those declarations of Vella and Fischman.

The District Court's misapplication of evidentiary burdens is another symptom of its larger failing: disqualifying Acacia's "in-house counsel" based on an unsupported suspicion that Rutherford shared confidences, which itself rested only on a presumption that Rutherford had acquired relevant confidences from Schlumberger in the first place.

## VII. ANY PRESUMPTION THAT RUTHERFORD SHARED CONFIDENTIAL SCHLUMBERGER INFORMATION WITH ACACIA "IN-HOUSE COUNSEL" WAS CONCLUSIVELY REBUTTED.

### A. This Court Should Examine The Evidentiary Record *De Novo* Given The District Court's Refusal To Do So And Failure To Make Adequate Findings Of Fact.

The Court's *de novo* examination of the factual record is warranted where a District Court reaches conclusions having "made no underlying findings of fact." *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 Fed. App'x 462, 464 (5th Cir. 2004) (reversing denial of motion following *de novo* review of questions of fact); *see also Hardison v. Abdon Callais Offshore, LLC*, 551 Fed. App'x 735, 739 (5th Cir. 2013)*; Stokes v. BWXT Pantex, LLC*, 424 Fed. App'x 324, 327 (5th Cir. 2011); *Gaalla v. Brown*, 460 Fed. App'x 469, 481 (5th Cir. 2002).

Here, the District Court made no "findings." Instead, the District Court merely asserted that uncited "evidence regarding Rutherford's involvement in the acquisition of the '319 patent, the decision to sue Schlumberger, and the hiring of Collins Edmonds" was something better than "conclusory" concerning the distinct

57

and separate issue of whether Rutherford had *communicated* confidential Schlumberger information *to someone else*.[10] (A0011.) As described below, there is a wealth of evidence—including the sworn statements of three individuals—directly addressing that point that will facilitate this Court's *de novo* review.

## B. The District Court Improperly Presumed That Sworn Statements Of Four Witnesses Were All False.

A sworn statement denying that an attorney shared the confidential information of a former client should be, and has been, given significant weight in assessing whether other attorneys should be disqualified. *See ProEducation*, 587 F.3d at 304*; Nat'l Oilwell*, 60 F. Supp. 3d at 767-68, 777. Here, four witnesses gave such statements.

Matthew Vella, ARG's CEO (and a non-practicing attorney) who made the decision to acquire the '319 Patent, declared under oath that:

> Charlotte Rutherford has never provided any confidential or proprietary information of Schlumberger, Ltd., or any of the other defendants identified in the caption of this action (collectively, 'Schlumberger'), to me or to any other person at ARG or any company affiliated with ARG…
>
> At no point has anyone at ARG or its affiliates ever informed me that Charlotte Rutherford shared such information with them. To my knowledge, at no point has anyone ever been asked to obtain this type of information from Charlotte Rutherford.

---

[10] As described below, the District Court's purported summary of this "evidence" is inaccurate in material respects.

> I made the decision to have ARG acquire rights in the '319 Patent. Ms. Rutherford concurred in the decision to acquire rights in the '319 Patent. However, Ms. Rutherford did not share, in any way, any confidential or proprietary information about Schlumberger to assist anyone at ARG or its affiliates (to my knowledge) or me in deciding to acquire rights in the '319 Patent.

(A3373-74.)

Gary Fischman, the licensing executive for Dynamic 3D, declared under oath that:

> Charlotte Rutherford has never provided any confidential or proprietary information of Schlumberger, Ltd., or any of the other defendants identified in the caption of this action (collectively, "Schlumberger"), to me or, to my knowledge, to any other person at ARG or any company affiliated with ARG…
>
> At no point has any one at ARG or its affiliates ever informed me that Charlotte Rutherford shared such information with them. To my knowledge, at no point has anyone ever been asked to obtain this type of information from Charlotte Rutherford…
>
> Charlotte Rutherford never provided me with any feedback, analysis, comments or revisions to the draft complaint by Dynamic 3D Geosolutions, LLC against Schlumberger. I have never shared any pre-suit infringement analysis with Charlotte Rutherford concerning Schlumberger's alleged infringement of the '319 Patent. To my knowledge, no one else has…

(A3375-76.)

Fischman further declared that:

> In early November of 2013 I assembled a PowerPoint presentation and presented it to Matt Vella during a November 7, 2013 telephone conference with Matt Vella during which I recommended that ARG acquire the '319 patent and form a subsidiary to license and enforce that patent.
>
> Charlotte Rutherford participated in the telephone call with and presentation to Mr. Vella. However, she excused herself from the call before there was any discussion related to Schlumberger.

(A1440.)

As described above in Section V, Rutherford, among other things, testified in deposition that she never shared confidential Schlumberger information with others at Acacia and did not attend a meeting with Austin Geo, or a call with Vella, in which Schlumberger was discussed. (A1388 ln. 11-19; A1428 ln. 14-25; A1389 ln. 10-19.) Collins also affirmed in a declaration that Rutherford never shared confidential Schlumberger information with him or had any input into the infringement case against Schlumberger. (A1444-45 ¶¶ 7-8, 13-14.)

"[T]o question" the sworn statements of Vella, Fischman, Rutherford and Collins "would essentially amount to concluding these four lawyers [who include the CEO of a large public company] are lying under oath as party of a conspiracy." *Nat'l Oilwell*, 60 F. Supp. 3d at 767. Here, the District Court appears to have done just that by reaching such an extraordinary conclusion without any supporting evidence. The District Court acknowledged the declarations of Vella and

60

Fischman, but said not a word about how their statements were contradicted. (A0011.) The District Court referred to no contradictory evidence because there is none. The District Court did not just "conclud[e ]" that a conspiracy existed, which would have been groundless. *Id.* It *presumed* one, which is worse.

### C.    The Documents Produced By Rutherford, Austin Geo And Acacia Are Consistent With These Sworn Statements.

All documents in the record are consistent with those sworn statements:

- Shortly after being hired as the senior manager of ARG's Houston office, Rutherford was a recipient of, or copied on, some emails from others at Acacia relating to the '319 Patent and Austin Geo before ARG signed the agreement to acquire the '319 Patent, but she did not communicate any information about Schlumberger or Petrel and was not asked for such information.   (A3215-16; A3218-19; A3221; A3223-24; A3526-27; A3530-31; A3533-34; A3536-37; A3830-31; A3833; A3835; A3837-40; A3842-44; A3846.)

- Rutherford was a recipient of, or copied on, some emails at Acacia during the few months preceding Acacia's notice of acceptable completion to Austin Geo, but she did not communicate any information about Schlumberger or Petrel and was not asked for any such information.  A3540; A3277-78; A3540-41; A3543-44; A3546-47; A3551-52; A3850.)

61

- Fischman forwarded a copy of Dynamic 3D's complaint against Schlumberger a few days before it was filed, but Rutherford made no edits and did not give any comments. (A3602.) The complaint was unchanged between the time Fischman forwarded it to Rutherford and its filing a few days later. (A3572-84; A3619-30.)

- Shortly before the complaint was filed, ARG executives, including Rutherford, received notice of the impending lawsuit against Schlumberger and were asked to state whether they had any objections. (A3586-87.) Like other executives, Rutherford responded "I have no objection." (A3595.)

At most, these documents show that Rutherford received, or was copied on, some communications concerning the '319 patent that were not specific to Schlumberger or Petrel because she was the new head of business development for the energy sector and the senior manager of Acacia's Houston office. There simply is no evidence that Rutherford shared any information whatsoever about Schlumberger, let alone confidential information.

### D. The District Court Committed Clear Error By Making Unsupported Determinations That Contradict Key Evidence.

In *ProEducation*, the Fifth Circuit reversed a disqualification order after an examination of the record revealed no "evidence to contradict" the sworn statements establishing that confidences of the movant were not shared.

62

*ProEducation*, 587 F.3d at 303.  Texas District Courts have been similarly exacting in their analysis.  *See, e.g., Nat'l Oilwell*, 60 F. Supp. 3d at 767; *Carbo Ceramics v. Norton-Alcoa Proppants*, 155 F.R.D. 158, 163 (N.D. Tex. 1994) (permitting rebuttable presumption of imputed disqualification, but finding it rebutted by evidence that the conflicted attorney did not communicate confidential information about his former client).  *Cf. Abney v. Wal-Mart*, 984 F. Supp. 526, 530 (E.D. Tex. 1997) (denying motion to disqualify defendant's law firm because plaintiff failed to "make some showing that some substantive conversations between the former client and the attorney occurred which contained information relevant to the present litigation").

Here, just as in *ProEducation*, the attorney representing the party adverse to the movant "testified" that he did not "personally acquir[e] confidential information about" Schlumberger, and Schlumberger "did not present any evidence to contradict [that] testimony." *ProEducation*, 587 F.3d at 303 (reversing disqualification order).  The District Court cited no evidence that contradicts Fischman's declaration.  No such evidence exists.

Courts have overturned findings as clearly erroneous even where evidence requires some degree of synthesis or interpretation.  *See, e.g., Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 968 (Fed. Cir. 2014) (reversing District Court's finding that patent was conceived prior to a certain date because the court "committed

63

clear error in finding corroboration of an earlier priority date in documents that collectively do not include any description of the claimed invention of the [patent]"); *Brennan v. Brennan*, 548 Fed. App'x 264, 270-71 (5th Cir. 2013) (vacating order where District Court's finding that a settlement agreement was a stock redemption was clearly erroneous); *Ibarra v. Baker*, 338 Fed. App'x 457, 468 (5th Cir. 2009) (vacating District Court's finding that attorneys provided false testimony during a sanctions hearing.).   The Court's task here is more straightforward.  To the extent the District Court's findings about Acacia even refer to Schlumberger, they are clearly erroneous because they directly contradict the very deposition testimony the Order purports to reference or otherwise contradict key evidence.

The District Court clearly erred in finding that Rutherford "participated in two meetings with the named inventors of the '319 patent for the purpose of assessing whether Acacia should acquire the patent for possible assertion against companies in the energy market," "[o]ther members of Acacia's legal and engineering departments were present," and "Schlumberger's Petrel product was discussed and identified as a potential target for assertion of the '319 Patent." (A0012.)  This finding is directly contrary to Rutherford's own testimony, in which she made clear that Schlumberger was not discussed at either of those meetings because she told the other attendees that she could not discuss Schlumberger.

(A1428 ln. 14-25; A1429 ln. 18-24.)   There is no evidence contradicting this testimony, as explained in Section V, above.

The District Court clearly erred in finding that Rutherford attended a presentation "discussing Schlumberger, after which Rutherford approved the recommendations to acquire the '319 patent and to sue several companies, including Schlumberger." (A0012.)  This is at odds with Rutherford's testimony that she intentionally removed herself from the November 7, 2013 presentation to Vella concerning the '319 Patent before Schlumberger was to be discussed. (A1389 ln. 10-19.)   Fischman's declaration verifies this fact, and there is no evidence contradicting it.  (A1440 ¶ 6.)  Furthermore, there is no evidence that Rutherford was the one to grant necessary approval for a lawsuit against Schlumberger.  (A1440 ¶¶ 5-8.)  Like every other Acacia employee, Rutherford selected the voting button labeled "I have no objection" when all employees received notice of the impending lawsuit. (A3595.)  Nor did Rutherford "approve" acquisition of the '319 patent.  (A3850-52; A1440 ¶ 10.)  Rutherford's testimony, corroborated by Vella, establishes that Vella alone made the decision without receiving any information from Rutherford and that Rutherford was not even aware of the financial terms ARG and Austin Geo agreed to.  (A1396; A3374 ¶ 5; A1433 ln. 1-13.)  No evidence contradicts this testimony, as explained in Section VII.B, above.

Finally, the District Court clearly erred in concluding that Rutherford shared relevant and confidential information obtained from Schlumberger with Acacia "in-house counsel." (A0012.) The conclusion contradicts, without explanation, the sworn statements of Rutherford, Vella, Fischman and Collins, which all confirm that no such sharing ever occurred. (A1388 ln. 11-19; A3373-74 ¶¶ 3-5; A3375-76 ¶¶ 4-8; A1444-45 ¶¶ 7-8, 13-14.) No evidence contradicts these declarations. No evidence even identifies "a specific piece of confidential information" that Rutherford possessed because the District Court only presumed as a matter of law that Rutherford obtained relevant, confidential information from Schlumberger. *Nat'l Oilwell*, 60 F. Supp. 3d at 769. The District Court's "findings" are erroneous under any standard of review. The Order should be reversed.

## VIII. CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Acacia respectfully requests that the Court reverse the Order and Judgment and remand to the District Court for further proceedings on the infringement claim against Schlumberger. If the Court determines it may only reverse or vacate the Order and Judgment and remand for further proceedings concerning Schlumberger's disqualification motion, Acacia respectfully requests that the Court do so with instructions to the District Court that will guarantee Acacia's right to a full and fair opportunity to respond to the motion

on the full record as necessary and appropriate under the other terms of such remand.

Dated:  August 20, 2015                    Respectfully submitted,

                                           STRADLING        YOCCA        CARLSON
                                             & RAUTH, P.C.

                                           By:   */s/ Marc J. Schneider*
                                                 Marc J. Schneider

                                           *Attorney for Appellants ACACIA RESEARCH*
                                           *CORPORATION and ACACIA RESEARCH*
                                           *GROUP, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2015, I caused the above and foregoing *Corrected* Opening Brief and Addendum of Appellants Acacia Research Corporation and Acacia Research Group, LLC to be electronically filed with the Clerk of the Court using CM/ECF, which will automatically send e-mail notification of such filing to the following counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system:

| | |
|---|---|
| Terrence J. Connolly<br>  terrence.connolly@lw.com<br>LATHAM & WATKINS LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>Telephone:  (212) 906-1200<br>Facsimile:  (212) 751-4864<br><br>Gabriel Bell<br>  gabriel.bell@lw.com<br>Maximilian A. Grant<br>  max.grant@lw.com<br>Thomas J. Humphrey<br>  thomas.humphrey@lw.com<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C. 20004-1304<br>Telephone:  (202) 637-2200<br>Facsimile:  (202) 637-2201<br><br>Ann Marie Wahls<br>  annmarie.wahls@lw.com<br>LATHAM & WATKINS LLP<br>330 North Wabash Avenue, Suite 2800<br>Chicago, IL  60611<br>Telephone:  (312) 876-7700<br>Facsimile:  (312) 993-9767 | Attorneys for Appellees<br>SCHLUMBERGER LIMITED<br>(SCHLUMBERGER N.V.),<br>SCHLUMBERGER HOLDINGS<br>CORPORATION,<br>SCHLUMBERGER<br>TECHNOLOGY CORPORATION |

| | |
|---|---|
| Michael James Collins<br>   mcollins@cepiplaw.com<br>John J. Edmonds<br>   jedmonds@cepiplaw.com<br>Shea Neal Palavan<br>   spalavan@cepiplaw.com<br>COLLINS, EDMONDS,<br>POGORZELSKI, SCHLATHER<br>TOWER, PLLC<br>1616 South Voss Road, Suite 125<br>Houston, Texas  77057<br>Telephone: (281) 501-3425<br>Facsimile:  (832) 415-2535 | Attorneys for Plaintiff-Appellant<br>DYNAMIC 3D GEOSOLUTIONS<br>LLC |

/s/ Marc J. Schneider
Marc J. Schneider

*Attorneys for Appellants ACACIA RESEARCH CORPORATION and ACACIA RESEARCH GROUP, LLC*

## CERTIFICATE OF COMPLIANCE

## UNDER FEDERAL RULES OF APPELLATE PROCEDURE

## 32(a)(7) AND FEDERAL CIRCUIT RULE 32

Counsel for Appellants Acacia Research Corporation and Acacia Research Group, LLC certifies that the brief contained herein has a proportionally spaced 14-point typeface and contains 13,413 words, based on the "Word Count" feature of Word 2010, including footnotes and endnotes.  Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this word count does not include the words contained in the Certificate of Interest, Table of Contents, Table of Authorities, Abbreviations, and Statement of Related Cases.


Dated:  August 20, 2015            Respectfully submitted,


                                   */s/ Marc J. Schneider*
                                   Marc J. Schneider

                                   *Attorney for Appellants ACACIA RESEARCH
                                   CORPORATION and ACACIA RESEARCH
                                   GROUP, LLC*

## ADDENDUM

Final Judgment, Dated March 31, 2015............................................................A0001

Order Granting Motion to Disqualify, Dated March 31, 2015............ A0002-A0015

FILED
2015 MAR 31  AM II: 56

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
    DEPUTY

| | |
|---|---|
| DYNAMIC 3D GEOSOLUTIONS, LLC, § | |
| PLAINTIFF, § | |
| § | |
| V. § | CAUSE NO. A-14-CV-112-LY |
| § | |
| SCHLUMBERGER LIMITED § | |
| (SCHLUMBERGER N.V.); § | |
| SCHLUMBERGER HOLDINGS § | |
| CORPORATION; AND § | |
| SCHLUMBERGER TECHNOLOGY § | |
| CORPORATION, § | |
| DEFENDANTS. § | |

## FINAL JUDGMENT

On this same date, the court rendered an order granting Defendants' Motion to Disqualify Counsel and Dismiss without Prejudice. Accordingly, the court renders the following Final Judgment pursuant to Federal Rule of Civil Procedure 58.

**IT IS HEREBY ORDERED** that Defendants Schlumberger Limited (Schlumberger N.V.), Schlumberger Holdings Corporation, and Schlumberger Technology Corporation are awarded costs of court.

**IT IS FURTHER ORDERED** that all relief not expressly granted herein is **DENIED**.

**IT IS FINALLY ORDERED** that the case is hereby **CLOSED**.

SIGNED this _____31st_____ day of March, 2015.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE

**A0001**

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS MAR 31  AM II: 56
AUSTIN DIVISION

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____ CU
                    DEPUTY

| | | |
|---|---|---|
| DYNAMIC 3D GEOSOLUTIONS, LLC, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. A-14-CV-112-LY |
| | § | |
| SCHLUMBERGER LIMITED | § | |
| (SCHLUMBERGER N.V.); | § | |
| SCHLUMBERGER HOLDINGS | § | |
| CORPORATION; AND | § | |
| SCHLUMBERGER TECHNOLOGY | § | |
| CORPORATION, | § | |
| DEFENDANTS. | § | |

## ORDER

Before the court are Defendants' Motion to Disqualify Counsel and Dismiss without Prejudice filed August 15, 2014 (Doc. #48); Plaintiff's Response to Defendants' Motion to Disqualify and Dismiss filed September 5, 2014 (Doc. #61); Schlumberger's Reply Brief in Support of Defendants' Motion to Disqualify Counsel and Dismiss without Prejudice filed September 19, 2014 (Doc. #68); Schlumberger's Supplemental Submission in Support of its Motion to Disqualify Counsel and Dismiss without Prejudice filed November 19, 2014 (Doc. #105); Plaintiff's Notice of Supplemental Authority in Support of its Opposition to Defendants' Motion to Disqualify Counsel and Dismiss filed November 19, 2014 (Doc. #106); Non-Parties Gary Fischman and Acacia Research Group, LLC's Notice of Authority and Declarations filed November 19, 2014 (Doc. #110); and Schlumberger's Supplemental Submission of Newly Produced Evidence in Support of Defendants' Motion to Disqualify Counsel and to Dismiss without Prejudice filed November 26, 2014 (Doc. #114). A hearing on the motion was held before the court on November 20, 2014, at which counsel for all parties appeared for argument. Having considered the motion, response, reply,

supplemental authority, exhibits, and arguments of counsel, the court will grant the motion to disqualify counsel and dismiss the cause without prejudice for the reasons to follow.

***Background***

Plaintiff Dynamic 3D Geosolutions LLC ("Dynamic Geo") is a shell company of Acacia Research Group LLC ("Acacia"), a patent licensing and enforcement company, formed by Acacia for the purpose of filing lawsuits on U.S. Patent No. 7,986,319 ("the '319 patent") against companies in the energy market. Acacia acquired the '319 patent, entitled "Method and System for Dynamic Three-Dimensional Geological Interpretation and Modeling," from Austin Geomodeling, Inc. on November 18, 2013. Dynamic Geo was formed on December 6, 2013, and acquired the '319 patent from Acacia on December 9, 2013.

On February 4, 2014, Dynamic Geo brought this action against Defendants Schlumberger Limited (Schlumberger N.V.), Schlumberger Holdings Corporation, and Schlumberger Technology Corporation (collectively, "Schlumberger"), along with several parallel actions against other entities Dynamic Geo asserts directly infringe the '319 patent. Dynamic Geo's complaint alleges that Schlumberger's Petrel E&P Software Platform ("Petrel") infringes the '319 patent. Schlumberger acquired the Petrel software from a Norwegian company, Technoguide, in 2002. Petrel is a Microsoft Windows-based software application for 3D visualization, 3D mapping and 3D reservoir modeling.

On August 15, 2014, Schlumberger filed Defendants' Motion to Disqualify Counsel and Dismiss without Prejudice, seeking an order from this court disqualifying: (1) Charlotte H. Rutherford, Esq. ("Rutherford"), based on her prior representation of Schlumberger in matters that Schlumberger asserts are substantially related to this case; (2) all inhouse counsel of Acacia and its

subsidiaries, including Dynamic Geo, based on the imputation of Rutherford's conflict to her fellow Acacia attorneys; and (3) Dynamic Geo's outside counsel, Collins, Edmonds, Pogorzelski, Schlather & Tower PLLC ("Collins Edmonds"), based on its communications with Rutherford and other Acacia-affiliated attorneys subject to disqualification. Schlumberger also moves to dismiss this case without prejudice based on the conflicts of interest that Schlumberger asserts infected the inception of this case and seeks to recover attorney's fees and costs.

Schlumberger hired Rutherford in 2006 as an intellectual-property counsel. Rutherford served as Schlumberger's Senior Counsel, Licensing and Litigation, from 2006 until 2009. In 2009, Rutherford was promoted to Deputy General Counsel for Intellectual Property. In or about June of 2013, Rutherford left Schlumberger and joined Acacia as Senior Vice President and Associate General Counsel. Rutherford remains an employee of Acacia, a nonparty in this case. Rutherford is not employed or retained by Dynamic Geo and has not made an appearance in this case or any related case involving the '319 patent brought by Dynamic Geo.

Schlumberger contends that during her seven years as an intellectual-property lawyer for Schlumberger, Rutherford personally represented Schlumberger in a variety of matters related to Dynamic Geo's patent-infringement claims. Schlumberger asserts that Rutherford was intimately involved in the rendering of legal advice about Petrel, the sole product accused of patent infringement in this case. Schlumberger alleges that in 2007, Rutherford led a twelve-person team responsible for performing a "Goldstar" assessment of Petrel for the dual purposes of assessing risk of lawsuits against it and of broadening Petrel's intellectual-property coverage .

Schlumberger asserts that within one month of her departure from Schlumberger, Rutherford began to participate in Acacia's decision to acquire and file suit against Schlumberger on the '319

3

**A0004**

patent. Schlumberger alleges that Rutherford participated in meetings regarding the '319 patent at which Schlumberger and Petrel were discussed and identified as a potential target for assertion of the patent. Schlumberger further alleges that Rutherford personally approved the decision to acquire and file lawsuits on the '319 patent, and that her "concurrence" recommendation was considered by Acacia's Chief Executive Officer before Acacia's decided to sue Schlumberger.

Rutherford denies having prepared of any of the GoldStar projects or reports or having immediate supervisory responsibility for any of the GoldStar projects. Rutherford testified that she sat in on a few GoldStar presentations that were provided to a broad audience of Schlumberger employees. One presentation, Rutherford recalls, concerned Petrel as it existed in 2007. Rutherford testified that she did not perform any substantive work on the GoldStar reports beyond providing general instructions on the procedure for creating a GoldStar presentation as used within Schlumberger. Rutherford further testified that around 2007 she managed outside counsel with general counsel for Schlumberger Information Solutions in litigation concerning copyright piracy involving an older version of Petrel. Thus, Dynamic Geo asserts that because the evidence clearly establishes that Rutherford had very limited involvement with Petrel, her limited involvement should not result in her disqualification, let alone the other attorneys who happen to work at Acacia due to her role as inhouse counsel of a nonparty corporation. Dynamic Geo further asserts that because Rutherford is not cocounsel with Collins Edmonds and has been walled off from any discussion of Schlumberger or its technology with anyone at Collins Edmonds, Schlumberger has failed to show that Rutherford disclosed any confidential information Collins Edmonds, so that any presumed conflict of interest cannot be imputed to Collins Edmonds.

4

**A0005**

*Legal Standard of Motion to Disqualify*

"When considering motions to disqualify, courts should first look to 'the local rules promulgated by the local court itself.'" *In re ProEducation Intern., Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (*quoting FDIC v. US. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995)). Pursuant to the Local Rules of the Western District of Texas, "[m]embers of the bar of this court and any attorney permitted to practice before this court must comply with the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct." Local Rule AT-7(a). However, Texas Rules "are not the sole authority governing a motion to disqualify." *ProEducation*, 587 F.3d at 299 (*quoting In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)). "Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992) (*citing Woods v. Covington County. Bank*, 537 F.2d 804, 810 (5th Cir. 1976)).

Courts also "consider the motion governed by the ethical rules announced by the national profession in light of the public interest and the litigants' rights." *ProEducation*, 587 F.3d at 299 (*quoting American Airlines*, 972 F.2d at 610). "Precedents have applied the ethical canons contained in the ABA [American Bar Association] Model Code." *American Airlines*, 972 F.2d at 610 (*citing Dresser*, 972 F.2d at 943). The relevant ABA Model Rule, Rule 1.9(b) and Texas Rule 1.09 "produce the same result in application—they both require that a departing lawyer must have actually acquired confidential information about the former firm's client or personally represented the former client to remain under imputed disqualification." *ProEducation*, 587 F.3d at 301. *Compare* MODEL RULES OF PROF'L CONDUCT R. 1.9(b) (2006) *and* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A, art. 10, § 9 (Vernon 2005).

5

Courts review of motions to disqualify involving prior representations is governed by the "substantial relationship" test. *See American Airlines*, 972 F.2d at 614.

> A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations.

*Id.* (*citing Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1569 (5th Cir. 1989); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1341, 1345 (5th Cir. 1981); *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1028 (5th Cir. 1981)). The party seeking disqualification bears the burden of proving the present and prior representations are substantially related. *See id.* (*citing Duncan*, 646 F,2d at 1028; *Corrugated Container*, 659 F.2d at 1347).

"Once it is established that the prior matters are substantially related to the present case, 'the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation.'" *Id.* (*quoting Duncan*, 646 F.2d at 1027–28). Although the test is categorical in requiring disqualification upon satisfaction of the substantial-relationship standard, it is not to be applied "in a mechanical way that might 'prevent[] an attorney from ever representing an interest adverse to that of a former client.'" *Id.* (*quoting Duncan*, 646 F.2d 1027–28). "Rather, a substantial relationship may be found only after 'the moving party delineates with specificity the subject matters, issues and causes of action' common to prior and current representations and the court engages in a 'painstaking analysis of the facts and precise application of precedent." *Id.* (*citing Duncan*, 646 F.2d at 1029) (internal quotation omitted)).

If the court determines that relevant confidential information was disclosed during the former period of representation, a second presumption attaches. This presumption is that a lawyer in

6

possession of client confidences shares those confidences with other lawyers at her firm. *See, e.g.*, *Corrugated Container*, 658 F.3d at 1346–47. In *American Airlines*, the Fifth Circuit mentions this second presumption but finds that it is not at issue in the case. 972 F.2d at 614 n. 1 (*citing Corrugated Container*, 659 F.2d at 1346). *See also ProEducation*, 587 F.3d at 303.

In *Corrugated Container*, the circuit addressed "a question not decided before this circuit, to wit, whether the presumptions that arise under the substantial relationship test are rebuttable." 659 F.2d at 1346. The circuit noted that "this circuit has exhibited reluctance to apply the latter presumption repeatedly to disqualify new partners of an attorney vicariously disqualified by virtue of his former partners' representing certain clients." *Id.* (*citing American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1129 (5th Cir. 1971)).

In *ProEducation*, the circuit went further, indicating that the decision in *American Airlines* has been altered by the addition of Comment 7 to the Texas Disciplinary Rules of Professional Conduct in 1990. *See ProEducation*, 587 F.3d at 304. The court further noted that with respect to the second presumption referenced in *American Airlines*, "that confidences obtained by an individual lawyer will be shared with other members of the firm," "[i]t is unclear whether a rebuttable presumption replaces the *American Airlines* irrebuttable presumption, or whether no presumption remains." *Id.* at 303, 304 n. 7. Thus, under Fifth Circuit precedent, no second irrebuttable presumption has been established. To the extent that the presumption that a lawyer shares client confidences he possesses with other lawyers in his firm exists after *ProEducation*, that presumption is rebuttable.

7

*Analysis*

*Rutherford*

The parties do not dispute that an actual attorney-client relationship existed between Rutherford and Schlumberger during her term of employment; therefore, the issue for the court to determine is whether Rutherford's former representation of Schlumberger is substantially related to Rutherford's present representation of Acacia. *See Johnston*, 869 F.2d at 1569; *Corrugated Container*, 659 F.2d at 1345; *Duncan*, 646 F.2d at 1028. Dynamic Geo argues that there are no legal or factual issues common to Rutherford's prior representation at Schlumberger and current representation at Acacia other than her general exposure to earlier versions of Petrel. Because the primary factual issues in this litigation regarding the '319 patent deal solely with the current version of Petrel, Dynamic Geo argues, Rutherford's representation of Schlumberger is irrelevant to the subject matter of this case.

However, Schlumberger has produced documents indicating that the allegedly infringing features of Petrel existed in its older versions. In addition, Schlumberger has produced evidence that Rutherford was involved in efforts to license the Petrel product during her representation of Schlumberger. This evidence establishes that Rutherford worked on matters that are more than tangentially related to the issues in Dynamic Geo's present action against Schlumberger. "[T]he subject matter 'does not need to be 'relevant' in the evidentiary sense to be 'substantially related.' It need only be akin to the present action in a way reasonable persons would understand as important to the issues involved." *American Airlines*, 972 F.2d at 619, 623 (*quoting Corrugated Container*, 659 F.2d at 1346). Therefore, the court concludes that Schlumberger has satisfied the substantial-

8

**A0009**

relationship test and, following *American Airlines*, irrebuttably presumes Rutherford acquired confidential information requiring that she be disqualified.

Having determined that Rutherford is disqualified, the court must next address whether Rutherford's acquisition of confidential information should be imputed to the lawyers at Acacia and Collins Edmonds. Schlumberger asks the court to apply a second irrebuttable presumption that Rutherford shared Schlumberger's confidential information with the lawyers at Acacia and Collins Edmonds. As previously discussed, however, the court, following *ProEducation* and *Corrugated Container*, must determine whether Dynamic Geo can rebut any presumption that Rutherford shared the confidential information she acquired at Schlumberger based on the factual record before the court.

*Acacia*

Dynamic Geo asserts that Rutherford has been screened and will continue to be screened from any discussion involving Schlumberger since her arrival at Acacia. Further, Dynamic Geo argues that because Rutherford's role as inhouse counsel at Acacia differs from that of an attorney serving as outside counsel, federal law on the issue of attorney disqualification should not be applied to a nonpracticing nonparty such as Acacia due to that fact that it employs numerous patent lawyers who work in a variety of capacities.

Rutherford serves as Senior Vice President and Associate General Counsel at Acacia. Rutherford has testified that she is responsible for the energy practice at Acacia, and that she performs various legal tasks in her position as Associate General Counsel. The Texas and ABA Model Rules each apply to attorneys within a "firm," which is defined to include attorneys in a corporate legal department. *See* Restatement (Third) of Law Governing Lawyers § 123 cmt. d(I)

9

(2000) ("[L]awyers in corporate legal offices will often have access to confidential information in the possession of other lawyers in the same office. The possibility of misuse of information in such situations can be as great as in private law firms. The lawyer-employees are to that extent comparable to partners and associates in a private law firm.").[1]

Moreover, the fact that Plaintiff Dynamic Geo is technically a separate corporation from nonparty Acacia does not shield Acacia's inhouse counsel from disqualification. Dynamic Geo is a wholly-owned Acacia subsidiary and a client of Acacia's inhouse legal department. Dynamic Geo has no employees and depends entirely on Acacia's inhouse legal department for its strategy and conduct in this litigation. Therefore, the court concludes that federal law regarding attorney disqualification applies to Rutherford and the other attorneys at Acacia for purposes of Dynamic Geo's cause of action against Schlumberger.

Dynamic Geo has submitted the declarations of Mr. Matthew Vella, President and CEO of Acacia and Mr. Gary Fischman, Vice President, Licensing, of Acacia, both of whom assert that Rutherford has not provided confidential or proprietary information of Schlumberger or any of its products and technology, including Petrel, to anyone at Acacia or its affiliates. However, evidence regarding Rutherford's involvement in the acquisition of the '319 patent, the decision to sue Schlumberger, and the hiring of Collins Edmonds demonstrate otherwise. Dynamic Geo argues that such evidence is conclusory at best. The court disagrees.

---

[1] The Texas Supreme Court has acknowledged favorably the language in Restatement (Third) of Law Governing Lawyers. *See In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 825 (Tex. 2010) (discussing Section 123). *See also In re America Home Products Corp.*, 985 S.W.2d 68, 80 (Tex, 1998) (discussing proposed Section 204). This court also finds the language in the Restatement useful and will apply the definition of firm found in the Restatement.

10

**A0011**

Rutherford testified that shortly after she began working for Acacia, she participated in two meetings with the named inventors of the '319 patent for the purpose of assessing whether Acacia should acquire the patent for possible assertion against companies in the energy market. Other members of Acacia's legal and engineering departments were present, including Fischman, who participated in the second meeting. Rutherford further testified that she was acting as a lawyer for Acacia at both meetings and that Schlumberger's Petrel product was discussed and identified as a potential target for assertion of the '319 patent. Rutherford confirmed that she did not excuse herself from either meeting even though Schlumberger and Petrel were discussed.

Rutherford also testified that she reviewed the '319 patent in anticipation of litigation, and that she and Fischman made the decision to retain Collins Edmonds as Dynamic Geo's counsel of record in all of the '319 patent litigation. Rutherford received recommendations from Fischman and Mr. Michael Collins of Collins Edmonds that Acacia acquire and file suit against Schlumberger on the '319 patent. Rutherford stated that she was presented with a PowerPoint presentation by Collins discussing Schlumberger, after which Rutherford approved the recommendations to acquire the '319 patent and to sue several companies, including Schlumberger. Rutherford admits that she was acting as Acacia's lawyer when she reviewed and approved those recommendations.[2] Having reviewed the factual record before the court, including Rutherford's deposition testimony, the court finds that Dynamic Geo has failed to rebut the presumption that Rutherford shared the confidential information she acquired from Schlumberger with Acacia's legal team. Therefore, the court will disqualify all inhouse counsel for Acacia and its subsidiaries, which includes Dynamic Geo.

---

[1] After receiving Rutherford's recommendation, Fischman and Collins made the same presentation to Vella and another member of Acacia's inhouse legal department, after which Vella authorized acquiring the '319 patent and filing suit against Schlumberger and others.

11

*Collins Edmonds*

Dynamic Geo argues that because the attorneys at Collins Edmonds have not had an attorney-client relationship with Schlumberger, disqualification is warranted only if actual disclosure of Rutherford's confidential information to Collins Edmonds is shown. *See Brennan's Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 174 (5th Cir. 1979). The court agrees; however, following *ProEducation* and *Corrugated Container,* the court must next determine whether Dynamic Geo can rebut any presumption that Rutherford shared the confidential information she acquired at Schlumberger based on the factual record before the court. Only after the party seeking disqualification has "first demonstrate[d] that there were substantive conversations between disqualified counsel and co-counsel, joint preparation for trial by those counsel, or the apparent receipt by co-counsel of confidential information" does the burden shift to co-counsel to prove non-disclosure. *In re American Home Products Corp.,* 985 S.W.2d 68, 81 (Tex.1998). *See also Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP,* 735 F. Supp. 2d 503, 524 (N.D. Tex. 2010); *Ledwig v. Cuprum S.A.,* Cause No. SA-03-CA-542-RF, 2004 WL 573650 at *3-4 (W.D. Tex. Jan. 28, 2004).

Dynamic Geo asserts that Schlumberger has failed to offer any proof that Rutherford has communicated Schlumberger's confidential information to Collins Edmonds. The court disagrees. The court's review of the facts reveal that multiple communications and conversations occurred between Rutherford, Fischman, and other inhouse Acacia attorneys and Michael Collins of Collins Edmonds during the preparation to file suit against Schlumberger and other energy companies. Those communications included: Rutherford's direct contact with Collins leading up to Rutherford's approval of the recommendation that Acacia acquire the '319 patent for the purpose of filing patent

infringement litigation against Schlumberger and other energy companies; Rutherford and Fischman

decision to retain Collins Edmonds; and Fischman's continued direct communication and work with

Collins Edmonds on the prosecution of Dynamic Geo's claims against Schlumberger. Further,

Rutherford testified that she continues to work with Collins Edmonds in the five related '319 patent

cases, all of which involve the same issue of patent validity asserted against Schlumberger. Finally,

Fischman continues to forward information about the instant suit against Schlumberger to

Rutherford. These direct contacts and communications between Rutherford, Fischman, and Collins,

coupled with the fact that Fischman, who reports to Rutherford and is as a result also disqualified,

continues to actively work with Collins Edmonds in prosecuting the suit against Schlumberger,

requires the court to disqualify Michael Collins and the other attorneys at Collins Edmonds.

*Conclusion*

Having determined that Rutherford, inhouse counsel at Acacia and its subsidiaries, and

Collins Edmonds must be disqualified in this case, and noting that Dynamic Geo's pleadings were

drafted by lawyers who are presumed to possess Schlumberger's confidential information, the court

concludes that dismissal of this action without prejudice is warranted. Although a harsh result, the

court finds that Schlumberger will face significant prejudice if Dynamic Geo is permitted to continue

to pursue its claims against Schlumberger in this case.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Disqualify Counsel and

Dismiss without Prejudice filed August 15, 2014 (Doc. #48) is **GRANTED AS FOLLOWS**:

1.    Charlotte H. Rutherford is disqualified from representing Plaintiff Dynamic 3D

      Geosolutions LLC in this cause;

13

**A0014**

2.      all inhouse counsel for Acacia Research Corporation and its subsidiaries, including

Plaintiff Dynamic 3D Geosolutions LLC, are disqualified from representing Plaintiff

Dynamic 3D Geosolutions LLC in this cause; and

3.      Collins, Edmonds, Pogorzelski, Schlather & Tower, PLLC and all lawyers in the firm

are disqualified from representing Plaintiff Dynamic 3D Geosolutions LLC in this

cause.

In all other respects, the motion is denied.

**IT IS FURTHER ORDERED** that all claims and causes of action asserted by Plaintiff

Dynamic 3D Geosolutions LLC against Defendants Schlumberger Limited, Schlumberger Holdings

Corporation, and Schlumberger Technology Corporation are **DISMISSED WITHOUT**

**PREJUDICE**.

SIGNED this _31st_ day of March, 2015.

LEE YEAKEL

UNITED STATES DISTRICT JUDGE

14

**A0015**