2015-1628, -1629

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

DYNAMIC 3D GEOSOLUTIONS LLC,
Plaintiff-Appellant,

ACACIA RESEARCH CORPORATION, ACACIA RESEARCH GROUP LLC,
Nonparties-Appellants,

v.

SCHLUMBERGER LIMITED (SCHLUMBERGER N.V.), SCHLUMBERGER
HOLDINGS CORPORATION, SCHLUMBERGER TECHNOLOGY
CORPORATION,
Defendants-Appellees,

*Appeal from the United States District Court for the Western District of Texas in
case no. 1:14-cv-00112-LY, Judge Lee Yeakel*

**REPLY BRIEF OF APPELLANTS
ACACIA RESEARCH CORPORATION AND
ACACIA RESEARCH GROUP, LLC**

Marc J. Schneider
Travis P. Brennan
STRADLING YOCCA CARLSON
  & RAUTH, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, California 92660
Telephone: (949) 725-4000
Facsimile: (949) 725-4100
Email: mschneider@sycr.com
Email: tbrennan@sycr.com
*Attorneys for Appellants ACACIA RESEARCH
CORPORATION and ACACIA RESEARCH
GROUP, LLC*

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ................................................................................1

ARGUMENT .......................................................................................6

I.     THE DISTRICT COURT DENIED ACACIA DUE PROCESS BY
       BLOCKING ITS ATTEMPT TO RESPOND TO *NEW*
       INFORMATION FILED THE DAY BEFORE THE HEARING. ................6

II.    THE EQUITIES WEIGH DECISIVELY IN ACACIA'S FAVOR,
       BUT THE DISTRICT COURT MISSED THIS STANDARD
       ELEMENT OF THE ANALYSIS.....................................................8

       A.     Acacia And Its Subsidiaries Control The Property Rights At
              Issue And The Order Disqualifies *All* Of Their "In-House
              Counsel" Without Proof That Any Of Them Acquired Relevant
              And Confidential Schlumberger Information. ......................9

       B.     Rutherford's "Concurrence" In Someone Else's Decision Is
              Meaningless Because She Was Only *Presumed* To Possess
              Relevant And Confidential Information.............................11

III.   THERE IS NO IRREBUTABLE PRESUMPTION THAT
       RUTHERFORD SHARED CONFIDENTIAL SCHLUMBERGER
       INFORMATION WITH ACACIA "IN-HOUSE COUNSEL." ..................12

       A.     Federal Law Controls And The Fifth Circuit Rejects An
              Irrebuttable Presumption. ...........................................12

       B.     Schlumberger Relies On Irrelevant Texas Law To Re-Advance
              A Position The District Court Rejected. ...........................16

IV.    THE FIFTH CIRCUIT DOES NOT REQUIRE ANY
       PRESUMPTION OF SHARED CONFIDENCES AND THERE IS
       NO REASON FOR ONE HERE..................................................18

LITIOC/2128477v1/101022-0109

V.     THE DISTRICT COURT FAILED TO APPLY THE FIFTH
       CIRCUIT'S EVIDENTIARY STANDARDS FOR IMPUTED
       DISQUALIFICATION. ...................................................................20

       A.     Schlumberger Was Never Held To Its Evidentiary Burden Of
              Persuasion, Which Required "Affirmative Evidence" That
              "Material Confidential" Informed Was Disclosed. ............................21

       B.     Schlumberger Substitutes Inapplicable State Law Evidentiary
              Burdens For The Controlling Federal Standards. ..............................23

       C.     No Governing Authority Bases Disqualification On A "Wink
              And A Nod." ......................................................................................26

VI.    THE DISTRICT COURT'S "FINDINGS" ARE CLEARLY
       ERRONEOUS. ...............................................................................28

       A.     Contrary to Schlumberger's Assertions, the District Court *Did*
              "Ignore Facts." ..................................................................................28

       B.     *Nothing* Contradicts Acacia's Rebuttal Evidence. ..............................29

       C.     Rutherford's Non-Communicative Acts Are Not "Affirmative
              Evidence" That She Communicated "Material Confidential"
              Information. .......................................................................................31

VII.   CONCLUSION .................................................................................32

LITIOC/2128477v1/101022-0109

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*Akerly v. Red Barn System, Inc.*,
  551 F.2d 539 (3d Cir. 1977) ...............................................................13

*Am. Int'l. Group, Inc. v. Bank of Am. Corp.*,
  827 F. Supp. 2d 341 (S.D.N.Y. 2011) ..............................................14

*Concrete Unlimited Inc. v. Cementcraft, Inc.*,
  776 F.2d 1537 (Fed. Cir. 1985) ...........................................................9

*Grant v. Thirteenth Court of Appeals*,
  888 S.W.2d 466 (Tex. 1994) ..............................................................25

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
  409 F.3d 127 (2d Cir. 2005) ........................................................12, 13

*Henderson v. Floyd*,
  891 S.W.2d 252 (Tex. 1995) ........................................................17, 18

*In re American Home Products Corp.*,
  985 S.W.2d 68 (Tex. 1998).........................................................25, 27

*In re Apeldyn Corp.*,
  391 F. App'x 873 (Fed. Cir. 2010) ...................................................26

*In re Columbia Valley Healthcare Sys., L.P.*,
  320 S.W.3d 819 (Tex. 2010) ......................................................16, 17

*In re Guar. Ins. Servs., Inc.*,
  343 S.W.3d 130 (Tex. 2011) .............................................................16

*In re Trans Texas Holdings Corp.*,
  498 F.3d 1290 (Fed. Cir. 2007) ..........................................................8

*Kennedy v. Mindprint (In re ProEducation Int'l, Inc.)*,
  587 F.3d 296 (5th Cir. 2009) ....................................................passim

*LaSalle Nat'l Bank v. Cty. Of Lake*,
  703 F.2d 252 (7th Cir. 1983) ............................................................26

iii

*Maricultura Del Norte v. Worldbuiness Capital, Inc.*,
   2015 U.S. Dist. LEXIS 29953 (S.D.N.Y. Mar. 9, 2015) .............................13, 16

*McNeil-PPC, Inc. v. L. Perrigo Co.*,
   337 F.3d 1362 (Fed. Cir. 2003) ............................................................................9

*Medical Ctr. At Elizabeth Place, LLC v. Premier Health Partners*,
   2013 U.S. Dist. LEXIS 104399 (S.D. Ohio Jul. 25, 2013)................................14

*Nat'l Oilwell Varco, LP v. Omron Oilfield & Marine*,
   60 F. Supp. 3d 751, 766 (W.D. Tex. 2014) ................................................passim

*National Medical Enters. v. Godbey*,
   924 S.W.2d 123 (Tex. 1996) .............................................................................17

*Panduit Corp. v. All States Plastic Mfg. Co.*,
   744 F.2d 1564 (Fed. Cir. 1984) ................................................................passim

*Southwire Co. v. Ramallo Bros. Printing, Inc.*,
   2009 U.S. Dist. LEXIS 116631 (D.P.R. Dec. 15, 2009) ...................................14

LITIOC/2128477v1/101022-0109

# INTRODUCTION

Disqualifying all of a company's "in-house counsel" to uphold its new employee's ethical duties to her former employer is always severe and rarely necessary. Doing so after refusing to hear the company in response to new evidence and argument is fundamentally flawed. These principles hold true independent of whether the movant can make the necessary showing that an attorney at the company *actually acquired* relevant and confidential information about the former employer from its former employee. Here, the District Court did not require *any* such showing from Schlumberger before blocking Acacia's attempt to be heard and disqualifying all "in-house counsel" of Acacia and its subsidiaries. Rather than addressing the District Court's errors directly, Schlumberger tries to rationalize them under inapplicable state standards for imputed disqualification. Those standards contradict Fifth Circuit law.

In disqualifying *all* Acacia "in-house counsel," the Order is inequitable on its face. Schlumberger claims there is no prejudice to Acacia because the ruling only extends to "attorneys." But the Order does not limit itself to the attorneys Acacia employed as of the date of the Order or those whose employment at Acacia otherwise overlapped with Charlotte Rutherford's. That distinction is critical here because technology licensing is Acacia's business. The Order "disqualifies" Acacia and its subsidiaries from involving any of Acacia's current or future

1

attorney-licensing executives in a suit against Schlumberger to enforce property rights they control.

Schlumberger claims that the equities are in its favor because "Rutherford's confidences and knowledge gained at Schlumberger necessarily informed" her "concurrence" in someone else's decision to sue Schlumberger for infringement of the '319 Patent. (Brief of Appellees ("SB") 46.) Even if such conduct could constitute actual disclosure of confidential information, it does not demonstrate any prejudice to Schlumberger because Rutherford was only *presume[d]"* to have "acquired confidential information requiring that she be disqualified" in the first place. (A0009.)

Schlumberger does not dispute this absence of proof. It claims that Rutherford "must be disqualified, *whether or not she has gained confidences*," because she had a "duty of confidentiality" *and* a "duty of loyalty" to Schlumberger. (SB 21 (emphasis added).) As a matter of law, however, Rutherford's duties do not automatically disqualify Acacia's "in-house counsel" as well. The Fifth Circuit rejects an irrebuttable presumption of shared confidences and has declined to require even a rebuttable presumption as a general rule. *See Kennedy v. Mindprint (In re ProEducation Int'l, Inc.)*, 587 F.3d 296, 303 (5th Cir. 2009). Even if a rebuttable presumption applies, Acacia satisfied its burden by producing sworn declarations refuting the charge of shared confidences, and

2

Schlumberger was required to contradict that testimony with "affirmative evidence." *Id.* This required Schlumberger to prove that Rutherford actually possessed Schlumberger's "*material* confidential" information in the first place then shared it with someone at Acacia. *Id.* (emphasis added). The District Court never held Schlumberger to the burden of proving either fact before disqualifying *all* of Acacia's "in-house counsel."

The significance of this legal error may be what compels Schlumberger to urge this Court to apply an irrebuttable presumption to Acacia as well. The District Court rejected that argument, which contradicts Fifth Circuit authority and relies on inapplicable decisions of Texas state courts. However, the District Court erred in holding, without explanation, that it "must" apply a rebuttable presumption here. As explained in Acacia's opening brief, there is no good rationale for applying any presumption to Acacia's "in-house counsel," and Schlumberger does not address that argument. (Acacia's Opening Brief ("AOB") 47-51.)

There was more legal error in the District Court's application of evidentiary standards. The District Court *implied* disclosure of confidences from evidence that did not show Rutherford communicating any information to anyone, rather than find *actual disclosure* of Schlumberger's relevant and confidential information. Schlumberger attempts to rationalize the District Court's method by again citing Texas law, which continues to base imputed disqualification on the mere *threat* of

LITIOC/2128477v1/101022-0109

disclosure of confidential information out of reluctance to give movants the ultimate burden of proof. But federal law, not state law, controls. The District Court acknowledged as much in its earlier *Nat'l Oilwell* decision, when it expressly disregarded a recent decision by the Texas Supreme Court in applying *ProEducation*.

Federal law *demands* the showing of shared confidences that Texas law does not. The movant in *ProEducation*, MindPrint, failed because it could not supply "*affirmative evidence* that Kennedy acquired *material confidential* information about MindPrint" after Kennedy gave rebuttal testimony that he had not acquired such information from another attorney. *Id*. (emphasis added). Acacia was entitled to have federal law control evidentiary burdens on the question of imputed disqualification. The Order should be reversed or vacated for this reason alone.

Schlumberger's final argument for upholding disqualification of all Acacia "in-house counsel" is that it supplied enough proof in the form of Rutherford's failure to object to Acacia's decisions to acquire the '319 Patent and to sue Schlumberger for infringing it. Schlumberger equates Rutherford's non-action with a "wink and a nod" from Rutherford to Acacia. (SB 45.) Schlumberger's arguments on this point rely on inapplicable cases concerning insider trading, not attorney disqualification. Moreover, any "wink" or "nod" would have been meaningless because, again, Rutherford was only *presumed* to possess

4

Schlumberger's relevant and confidential information in the first place. Such "evidence" does not even constitute *prima facie* proof of shared confidences, let alone contradict the direct rebuttal evidence from Acacia on that point.

Ultimately, the District Court applied a rebuttable presumption to Acacia in name only. It disqualified all Acacia "in-house counsel" because it adopted, wholesale, Schlumberger's speculation about what Rutherford did with confidential information she was only presumed to have. No authority supports this result, and the Fifth Circuit rejects this approach. "Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration" of "all of the facts particular to [the] case . . . in the context of the relevant ethical criteria and with meticulous deference to litigant's rights." *ProEducation,* 587 F.3d at 300. The Order should be reversed.

5

# ARGUMENT

## I.    THE DISTRICT COURT DENIED ACACIA DUE PROCESS BY BLOCKING ITS ATTEMPT TO RESPOND TO *NEW* INFORMATION FILED THE DAY BEFORE THE HEARING.

The District Court refused to hear from Acacia at the November 10, 2014 hearing.  (AOB 33-34.)  The day before, it had accepted Schlumberger's filing of 151 pages of supplemental evidence and argument.  (*Id*. 35-36.)  After hearing oral argument from Schlumberger's counsel about why it should disqualify *all* of Acacia's in-house attorneys, the District Court ordered Acacia's counsel to be silent when he rose to respond.  (*Id.*; *see also* A3158-3309.)  Acacia was denied the opportunity to address any of Schlumberger's arguments, which included the supplemental briefing, before the District Court granted all the relief Schlumberger sought.

The District Court denied Acacia its due process in refusing to hear from it.  (AOB 33-36.)  Acacia had a "personal stake in the outcome" of Schlumberger's disqualification motion, yet was not permitted to respond to Schlumberger's supplemental briefing and oral argument.  (*Id*. 33 (citing *EEOC v. Louisiana Office of Comm. Servs.*, 47 F.3d 1438, 1442 (5th Cir. 1995).)  But for this denial, Acacia would have addressed, before the original fact-finder, Schlumberger's mischaracterization of evidence that Acacia and others had produced, explained the legal significance of the sworn statements by its own employees and of the

6

complete absence of contradictory evidence, described the particular prejudice it would face if its entire team of licensing executives were disqualified, and enumerated the reasons particular to Acacia why no presumption of imputed conflict applies to those licensing executives.  (AOB 34.)  Instead, Acacia was deprived of a "full and fair opportunity" to be heard in response to Schlumberger's 151-page supplemental brief.  (AOB 34 (citing *Stone v. FDIC*, 179 F.3d 1368, 1375-76 (Fed. Cir. 1999) and *In re Trans Texas Holdings Corp.*, 498 F.3d 1290, 1297 (Fed. Cir. 2007).)

Schlumberger's argument misses the point.  Acacia was deprived of due process because the District Court barred it from participating in oral argument at the hearing—not because Acacia lacked notice of Schlumberger's original motion. Furthermore, Acacia did not, as Schlumberger incorrectly argues, "relinquish" its opportunity to be heard by failing to make an initial appearance at the beginning of the hearing.  (SB 63.)  The transcript records the appearance of counsel for the parties and Acacia.  (A3379.)  When Acacia's counsel identified himself, the District Court flatly refused to hear from him, stating that it has "heard from who [it's] going to hear from today" and that the Court "[did not] need to hear anything else."  (A3467.)

Nor did Acacia's 20-page Notice of Authority and Declarations, also filed the day before the hearing, constitute a "full and fair opportunity" to respond to

7

Schlumberger's 151-page supplemental brief and exhibits. (AOB 35-36.) *See In re Trans Texas Holdings Corp.*, 498 F.3d at 1297. Acacia appeared at the hearing for the purpose of responding to Schlumberger's motion *and* its supplemental submission and oral argument, but was denied its due process right to be heard. (AOB 34 (citing A3466 ln. 21 – A3467 ln. 6).) For this reason alone, the Order should be reversed.

## II. THE EQUITIES WEIGH DECISIVELY IN ACACIA'S FAVOR, BUT THE DISTRICT COURT MISSED THIS STANDARD ELEMENT OF THE ANALYSIS.

The Fifth Circuit favors a "balancing approach" with respect to weighing the equities of disqualification and has declared this approach to be "the most prudent under Fifth Circuit guidance as a whole." (AOB 37 (quoting *In re DataTreasury Corp.*, 2010 U.S. App. LEXIS 16631, at *7 (Fed. Cir. Aug. 5, 2010) (citing *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1348 (5th Cir. 1981) and *United States v. Kitchin*, 592 F.2d 900 (5th Cir. 1979)) (declining to issue writ overturning denial of disqualification motion); *Nat'l Oilwell Varco, LP v. Omron Oilfield & Marine*, 60 F. Supp. 3d 751, 766 (W.D. Tex. 2014) (applying *Kennedy v. Mindprint* (*In re ProEducation Int'l, Inc.*), 587 F.3d 296, 303 (5th Cir. 2009) in rejecting irrebuttable presumption of shared confidences and denying motion for imputed disqualification)).

LITIOC/2128477v1/101022-0109

Rather than balancing equitable factors, however, the District Court disqualified all Acacia in-house counsel solely on the purported grounds that "Dynamic Geo has failed to rebut the presumption that Rutherford shared the confidential information she acquired from Schlumberger with Acacia's legal team." (A0012.) It neither acknowledged nor applied the Fifth Circuit's balancing approach, let alone offer an equitable justification for effectively rendering Acacia and its subsidiaries unable to enforce their own property rights against Schlumberger. (*See* AOB 37-40.)

> **A.    Acacia And Its Subsidiaries Control The Property Rights At Issue And The Order Disqualifies *All* Of Their "In-House Counsel" Without Proof That Any Of Them Acquired Relevant And Confidential Schlumberger Information.**

A patent holder has "the right to exclude others from making, using, and selling the invention and to enforce those rights until the [patent is] held invalid [or expires]." (AOB 39.) *Concrete Unlimited Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed. Cir. 1985); *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1372 (Fed. Cir. 2003). Acacia's wholly-owned subsidiary, the plaintiff in the underlying suit, owns the '319 Patent. Because the Order broadly disqualifies Gary Fischman and every other in-house attorney, regardless of when such attorney began working for Acacia, Acacia's subsidiaries must enforce their rights

against Schlumberger without the involvement of *any* Acacia licensing attorney. This is an extreme result that unnecessarily encumbers property rights.

Schlumberger's narrow argument ignores the unique but obvious inequity. Invoking cases that disqualified a party's outside counsel relatively early in litigation, Schlumberger contends there is no substantial prejudice in disqualification here because it made its motion before discovery began in the underlying litigation. (SB 47.) However, Dynamic 3D's ability to replace its outside counsel at this stage in the litigation, and any prejudice related thereto, is entirely beside the point when it comes to Acacia's "in-house counsel." Barring all of a company's in-house attorneys is inherently prejudicial regardless of whether it occurs the day after the complaint is filed or in the middle of a case. Moreover, even if it were possible for Acacia to replace its entire in-house legal department, the Order does not allow for it because it does not distinguish between current and future "in-house counsel." (A0012.)

Schlumberger's argument that Acacia did not "attempt to cure or use different personnel" is meritless. (SB 48.) The Fifth Circuit makes clear that a court's analysis of facts relating to whether confidences were shared is independent of its balancing of the equitable consequences of its decision. *See, e.g., Nat'l Oilwell*, 60 F. Supp. 3d at 767 n.11 (noting that the Court may consider efforts like "Chinese walls" to rebut the presumption of shared confidences, but not finding

such efforts dispositive, and separating its equitable inquiry from its analysis of the factual record).  The District Court's failure to undertake any equitable analysis is separate and distinct from its failure to account for evidence that Rutherford *was* adequately "screened," including the uncontradicted evidence that Rutherford told the inventors of the '319 Patent she could not discuss Schlumberger and excused herself from an Acacia conference call before  Schlumberger was discussed. (AOB 15-17.)

### B.    Rutherford's "Concurrence" In Someone Else's Decision Is Meaningless Because She Was Only *Presumed* To Possess Relevant And Confidential Information.

Schlumberger mistakenly argues that the equities are in its favor because "Rutherford's confidences and knowledge gained at Schlumberger necessarily informed" her "concurrence" in someone else's decision to sue Schlumberger for infringement of the '319 Patent.  (SB 46.)  As explained in detail below, such conduct cannot constitute *actual* disclosure of information.  Even if it could, however, Schlumberger is not prejudiced because Rutherford was only "*presume[d]*" to have "acquired confidential information requiring that she be disqualified" in the first place.  (A0010 (emphasis added).)  Schlumberger does not dispute this absence of proof.  Instead, it argues the District Court was justified in finding that confidences were shared on the strength of serial presumptions. Whatever the District Court may presume, however, it may not presume prejudice

11

in balancing equities. *See, e.g., Nat'l Oilwell*, 60 F. Supp. 3d at 769 (denying

motion to disqualify all attorneys at a firm because movant "simply never explains

to the Court which specific piece of confidential information could lead to what

specific harm").

## III. THERE IS NO IRREBUTABLE PRESUMPTION THAT RUTHERFORD SHARED CONFIDENTIAL SCHLUMBERGER INFORMATION WITH ACACIA "IN-HOUSE COUNSEL."

### A. Federal Law Controls And The Fifth Circuit Rejects An Irrebuttable Presumption.

"Motions to disqualify are substantive motions affecting the rights of the

parties and are determined by applying standards developed under federal law."

(AOB 41 (quoting *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992).)

"The authority of federal courts to disqualify attorneys derives from their inherent

power to preserve the integrity of the adversary process." *Hempstead Video, Inc.*

*v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). State disciplinary

rules "merely provide general guidance and not every violation of a disciplinary

rule will necessarily lead to disqualification." *Id.*; *see also ProEducation*, 587 F.3d

at 299-300.

The District Court correctly held that an irrebuttable presumption of shared

confidences is not the law in the Fifth Circuit. (A0008 (citing *ProEducation*, 587

F.3d at 304).) In *ProEducation*, the Fifth Circuit reversed a trial court's use of an

irrebuttable presumption.   It held that the attorney, Kennedy, who had not personally represented the movant, Mindprint, "should have the opportunity to demonstrate that he did not obtain confidential information regarding" Mindprint. *ProEducation*, 587 F.3d at 302.   The Court made clear that the irrebuttable presumption of shared confidences referenced in *American Airlines* was mere *dicta* and "[i]t is unclear whether a rebuttable presumption replaces the *American Airlines* irrebuttable presumption, or whether no presumption remains." *Id*. at 304 n.7.   The Court determined it need not decide the issue because Kennedy had supplied a sworn statement denying acquisition of MindPrint's confidential information and the Court found that Mindprint had failed "to contradict [that] testimony" with "affirmative evidence that Kennedy acquired material confidential information about Mindprint." *Id*. at 303.

In rejecting an irrebuttable presumption of shared confidences, the Fifth Circuit joined an already "strong trend" that includes the Second, Third, Sixth, Seventh, and Federal Circuits.  *Hempstead*, 409 F.3d at 133 (citing, *inter alia*, *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988) and *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Labs., Inc.*, 607 F.2d 186, 197 (7th Cir. 1979) (en banc)).  *See also Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1580 (Fed. Cir. 1984); *Akerly v. Red Barn System, Inc.*, 551 F.2d 539, at 543-44 (3d Cir. 1977); *Maricultura Del Norte v. Worldbuiness*

13

*Capital, Inc.*, 2015 U.S. Dist. LEXIS 29953, at *43-44 (S.D.N.Y. Mar. 9, 2015) (citing *Hempstead,* 409 F.3d at 133-34) (denying motion to disqualify law firm and rejecting irrebuttable presumption because precedent "could not be clearer; that presumption is rebuttable").

Applying *ProEducation*, *Nat'l Oilwell* rejected an irrebuttable presumption of shared confidences in factual circumstances akin to those here, where the migrating attorney personally represented the movant and was alleged to have shared confidences with attorneys at a new firm, who were the target of the disqualification motion. *See Nat'l Oilwell*, 60 F. Supp. 3d at 762, 767-69. *Cf. Medical Ctr. At Elizabeth Place, LLC v. Premier Health Partners*, Case No. 3:12-cv-26, 2013 U.S. Dist. LEXIS 104399, at *7-11 (S.D. Ohio Jul. 25, 2013) (rejecting irrebuttable presumption and denying motion to disqualify law firm); *Am. Int'l. Group, Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 345-46 (S.D.N.Y. 2011) (same); *Southwire Co. v. Ramallo Bros. Printing, Inc.*, Civil No. 03-1100 (GAG/CVR), 2009 U.S. Dist. LEXIS 116631, at *33-34 (D.P.R. Dec. 15, 2009) (same).

Schlumberger's attempt to distinguish *ProEducation* fails. It argues that *ProEducation*'s holding is limited exclusively to instances in which the migrating attorney did not personally represent the former client, but ignores *Nat'l Oilwell's* application to the contrary. *ProEducation* precludes an irrebuttable presumption

14

where the question is whether "confidences are shared among lawyers at a law firm," regardless of whether the ostensible sharing occurred before or after an attorney's migration. *Nat'l Oilwell*, 60 F. Supp. 3d at 762. The obsolete "*American Airlines* irrebutable presumption" of shared confidences, which never constituted binding precedent to begin with and which *ProEducation* expressly rendered obsolete, did not turn on whether a migrating attorney personally represented the former client, and neither does the scope of *ProEducation*'s holding.[1] *ProEducation*, 587 F.3d at 303, 304 n.7.

Like Kennedy in *ProEducation*, Acacia's "in-house counsel" are alleged to have acquired confidential information not from a former client of theirs, but indirectly through another attorney. If any presumption is justified under the circumstances of this case, it is rebuttable. Indeed, "to apply such a presumption irrebuttably would result in a mechanical application of the rule of disqualification," which the Fifth Circuit does not permit. *Nat'l Oilwell*, 60 F. Supp. at 765 (citing *ProEducation* and *Corrugated Container*).

---

[1] Schlumberger describes an irrebuttable presumption of shared confidences as a "long-established standard," but that misrepresents the controlling precedent. (SB 34.) In *ProEducation*, the Fifth Circuit made clear that such a presumption was never the rule in the Fifth Circuit. 587 F.3d at 304-05.

**B.**    **Schlumberger Relies On Irrelevant Texas Law To Re-Advance A Position The District Court Rejected.**

Fifth Circuit law, not Texas law, governs whether all Acacia in-house counsel may be disqualified by imputation. (AOB 48 n.8, citing *Dresser*, 972 F.2d at 543; *Nat'l Oilwell*, 60 F. Supp. 3d at 760 n.4 (rejecting irrebuttable presumption of shared confidences despite "clear[]" holdings of Texas Supreme Court to the contrary because it "looks to Fifth Circuit precedent as controlling authority").) *Cf. Maricultura*, 2015 U.S. Dist. LEXIS 29953, at *43 ("Second Circuit law, not Texas law, controls the issue of imputation."). In urging an irrebuttable presumption here, Schlumberger relies on dicta in *American Airlines* that *ProEducation* expressly rendered obsolete (*see* AOB 44-46 and Section III.A., above) and four decisions by the Texas Supreme Court. Even if that court were a source of governing authority, and it is not, each case is inapposite.

In *In re Guar. Ins. Servs., Inc.*, 343 S.W.3d 130, 137 (Tex. 2011), the court granted mandamus relief *vacating* the trial court's order that had disqualified a law firm. Even if the case's disposition were consistent with Schlumberger's argument, the case is still incomparable because it involved a purported conflicted stemming from "a nonlawyer [paralegal] who worked on one side of a case at one firm to work on the other side of the same case at the opposing firm[.]" *Id.* at 131-32. The court stated that Texas law "recognizes the distinctions between lawyers

16

and nonlawyers," and their respective duties. *Id*. at 133-34. The second case Schlumberger cites, *In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819 (Tex. 2010) also involved a nonlawyer who had worked on both sides of the same case. The court considered whether "a law firm should be disqualified from the underlying suit on the basis of a legal assistant's work on the matter after previously having worked on the same matter while employed by opposing counsel." *Id*. at 822. Here, Rutherford did not work on the underlying suit for Schlumberger, or Dynamic 3D for that matter (A0003), and would not be a "nonlawyer" under Texas law.

In Schlumberger's third case, the attorney who purportedly shared confidential information with other attorneys at his new firm had never represented the movant. *See National Medical Enters. v. Godbey*, 924 S.W.2d 123, 124 (Tex. 1996). The case turned on a lawyer's duty to "non-clients" arising from former representations, which is not at issue here. *Id*. at 129. In Schlumberger's fourth and last case, *Henderson v. Floyd*, 891 S.W.2d 252, 253 (Tex. 1995), the court issued a *per curiam* opinion of less than three pages disqualifying one of two law firms representing the plaintiff as "co-counsel." Disqualification turned on the fact that an attorney at the disqualified firm had previously worked on the other side of the case "during the pendency of this litigation." *Id*. Here, the underlying suit began long after Rutherford left Schlumberger. What is more, Schlumberger

17

would have this Court uphold a ruling far more draconian than disqualification of one "co-counsel"—disqualification of *all* "in-house counsel" for Acacia and its subsidiaries.  Like the other Texas cases, *Henderson* is inapplicable.

## IV.  THE FIFTH CIRCUIT DOES NOT REQUIRE ANY PRESUMPTION OF SHARED CONFIDENCES AND THERE IS NO REASON FOR ONE HERE.

The Fifth Circuit holds "[i]t is unclear whether a rebuttable presumption replaces the American Airlines irrebuttable presumption, or whether no presumption remains."  (AOB 45 (quoting *ProEducation*, 587 F.3d at 304 n.7).)  What *is* clear is the enduring principle that "[b]ecause of the severity of disqualification, we do not apply disqualification rules 'mechanically,' but we consider '[a]ll of the facts particular to [the] case . . . in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights."  (AOB 41 (quoting *ProEducation*, 587 F.3d at 300).)  The District Court abandoned this standard by mechanically holding, without explanation, that it "must" apply a rebuttable presumption that Rutherford shared confidential Schlumberger information.  (A0010.)  That legal error is sufficient to reverse or vacate the Order.  (AOB 46-47.)  Schlumberger fails to address the reasons why *no* presumption is appropriate here, which also warrant reversal.  (*Id*. at 47-51.)

As a general matter, extraordinary claims of fact require extraordinary evidence.  When a movant is entitled to a rebuttable presumption of ordinary facts

giving rise to imputed disqualification, it should at least have to show *prima facie* evidence of extraordinary ones in the first instance. It is ordinary for an attorney representing a client to share some of the client's confidential information with his colleagues. In contrast, it is extraordinary for an attorney to make unauthorized disclosure of a former client's confidential information after leaving employment with a firm representing that client. The party asserting such disclosure does not deserve *any* presumption that it occurred.

The logical case for any presumption is even weaker here because in-house attorneys are at issue. Rutherford's former fellow in-house attorneys at Schlumberger who never worked on anything Petrel-related could still reasonably bear the burden of rebutting a presumption of acquiring confidential Petrel information because their exposure to such information would at least have fallen within their own employment relationship with Schlumberger. In contrast, Acacia's "in-house counsel" should *not* bear that burden because they had *no* such direct access to Schlumberger's confidential information.

Acacia has not been able to find a single court decision, other than the District Court's Order here, that applied any presumption of disclosed confidences to disqualify an entire in-house legal department. As explained in Acacia's opening brief, applying even a rebuttable presumption here is not reasonably

19

tailored to the goal of safeguarding the integrity of the adversarial process in today's increasingly transitory legal profession. (AOB 47-51.)

Schlumberger does not address these points. Instead, it improperly tries to redefine the parties' respective burdens of proof, as described below.

## V. THE DISTRICT COURT FAILED TO APPLY THE FIFTH CIRCUIT'S EVIDENTIARY STANDARDS FOR IMPUTED DISQUALIFICATION.

Having decided it "must" apply a rebuttable presumption of shared confidences, the District Court could not disqualify Acacia's in-house counsel unless Acacia failed to produce rebuttal evidence *or* Schlumberger overcame rebuttal testimony with "evidence to contradict [that] testimony." *ProEducation*, 587 F.3d at 303. Neither condition transpired. Furthermore, to prevail over the rebuttal declarations of Matthew Vella and Gary Fischman, Schlumberger needed to present "*affirmative evidence* that" in-house attorneys at Acacia "*acquired material confidential information* about" Schlumberger from Rutherford. *Id.* (Emphasis added.) The Order violates both of these standards, which Schlumberger does not address. Instead, Schlumberger again cites inapplicable Texas law to try and redefine the parties' burdens in a manner contrary to Fifth Circuit precedent.

### A. Schlumberger Was Never Held To Its Evidentiary Burden Of Persuasion, Which Required "Affirmative Evidence" That "Material Confidential" Informed Was Disclosed.

The District Court admitted Acacia and Dynamic 3D's rebuttal evidence, including the Vella and Fischman declarations, which directly refute the charge of shared confidences.[2]  As a matter of law, Acacia satisfied its burden of production.  (AOB at 54-55.)  Schlumberger needed "to contradict [that] testimony" with other evidence to satisfy its burden of persuasion.  *ProEducation*, 587 F.3d at 303; *see also Nat'l Oilwell*, 60 F. Supp. 3d at 769 (holding "it is [movant's] burden show why disqualification, a severe remedy, is called for").  While the Order made reference to other evidence, none of it *contradicts* Acacia's rebuttal evidence, and the District Court did not hold otherwise.  Instead, in a legal *non-sequitur*, it held the other evidence showed that "Dynamic Geo has failed to rebut the presumption that Rutherford shared the confidential information she acquired from Schlumberger with Acacia's legal team."  (A0012.)  This had the effect of imposing the ultimate burden of persuasion on a third party non-movant, which is an error of law.  (AOB 54-55.)

---

[2] "Before the court are . . . Non-Parties Gary Fischman and Acacia Research Group, LLC's Notice of Authority and Declarations filed November 19, 2014." (A0001.)  "Dynamic Geo [sic] has submitted the declarations of Mr. Matthew Vella, President and CEO of Acacia and Mr. Gary Fischman, Vice President, Licensing, of Acacia, both of whom assert that Rutherford has not provided confidential or proprietary information of Schlumberger or any of its products and technology, including Petrel, to anyone at Acacia or its affiliates." (A0011.)

21

The District Court erred again in granting the Motion without requiring from Schlumberger "*affirmative evidence* that" other in-house attorneys at Acacia "*acquired material confidential information* about" Schlumberger from Rutherford. *Id.* (Emphasis added). Instead, the Court relied on the purported attendance rosters of two meetings and one conference call concerning the '319 Patent generally, and an email in which Fischman forwarded a copy of Dynamic 3D's complaint against Schlumberger to Rutherford before the complained was filed, unchanged, a few days later. (AOB 62-66.) In other words, the District Court *implied* shared confidences from Rutherford's attendance, even though the uncontradicted testimony states that she told the attendees of the meetings that she could not discuss Schlumberger, and therefore Schlumberger was not discussed, and excused herself from the conference call before Schlumberger was to be discussed. (AOB 58-61.)

Even if that implication were plausible based on the complete evidentiary record (and as described below in Section VI, below, it is not), it is insufficient as a matter of law because "affirmative evidence" is required. Indeed, the District Court relied on the exact type of "evidence" that the Fifth Circuit has distinguished from the "affirmative evidence" required. In *ProEducation*, Kennedy testified that he never received confidential and relevant information about Mindprint. Mindprint presented no evidence contradicting that testimony, but relied on other

22

testimony that Mindprint "was discussed at a monthly bankruptcy section meeting . . . which Mr. Kennedy may or may not have attended." *ProEducation*, 587 F.3d at 303. The witness further stated that Kennedy "might have heard [something] in the halls" that was relevant and confidential. *Id.* The Fifth Circuit held these statements were insufficient because they "do not constitute affirmative evidence that Kennedy acquired material confidential information about MindPrint." *Id.*; *see also Nat'l Oilwell*, 60 F. Supp. 3d at 769 (movant never "explain[ed] to the Court which specific piece of confidential information could lead to what specific harm"). Here, Rutherford's attendance at two meetings and one phone call concerning the '319 Patent generally, and her *receipt* of one court document from Fischman, "do not constitute affirmative evidence that [Acacia's in-house counsel] acquired material confidential information about [Schlumberger]." *ProEducation*, 587 F.3d at 303. Moreover, Rutherford's uncontradicted testimony, from which the District Court purports to draw its findings, confirms that she told attendees at the meetings that she could not discuss Schlumberger and excused herself from the conference call before Schlumberger was discussed. (*See* Section VI, below.)

### B. Schlumberger Substitutes Inapplicable State Law Evidentiary Burdens For The Controlling Federal Standards.

Schlumberger does not contend that the District Court applied the foregoing burdens, does not contend there is evidence contradicting the sworn statements of

Vella and Fischman, and does not otherwise identify any "affirmative evidence" that someone at Acacia acquired *material* and *confidential* Schlumberger information from Rutherford.  Instead, it tries to rationalize the Order by redefining both Acacia's rebuttal burden and its own ultimate burden of proof.  Schlumberger relies on inapplicable Texas law to suggest that imputed disqualification must turn on the mere *threat* of disclosed confidences, rather than *actual* disclosure of confidences.  This argument contradicts Fifth Circuit precedent.

Schlumberger claims that Texas law defines the test for imputed disqualification:

> As the Texas Supreme Court explained, "[t]he test for disqualification is met by demonstrating a genuine *threat* of disclosure, not an actual materialized disclosure," because "focusing on actual disclosure would place a virtually insurmountable burden on the party seeking disqualification, since the only persons who know whether confidences were actually shared will generally be the very lawyers seeking to avoid disqualification."

(SB 40-41 (quoting *Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466, 467 (Tex. 1994) (emphasis in original)).  Using this standard, Schlumberger argues that Acacia did not meet its rebuttal burden because it purportedly did not prove that Rutherford was completely screened from any matters concerning Schlumberger, which it says was necessary to eliminate even the potential of disclosed confidences.  (SB 37-42).

24

However, this standard directly contradicts the Fifth Circuit's standard in *ProEducation*, which the District Court itself followed in *Nat'l Oilwell*. The Fifth Circuit denied MindPrint's disqualification motion because Mindprint could not supply "*affirmative evidence* that Kennedy *acquired* material confidential information about MindPrint." *ProEducation*, 587 F.3d at 302. In other words, controlling law is incompatible with the assertion that "focusing on actual disclosure would place a virtually in surmountable burden on the party seeking disqualification." *Grant*, 888 S.W.2d at 467. Nor does the Fifth Circuit defer to a movant's interest in pursuing disqualification without relying on its confidential information. The Fifth Circuit affirmed that "the danger to a client . . . of revealing confidential information is 'de minimis' when a lawyer seeks to establish lack of knowledge of the client's confidential information." 587 F.3d at 302.

Furthermore, the cases Schlumberger cites as examples of its point are, again, inapposite. In *Grant*, the court upheld disqualification of the defendant's law firm because one of the firm's legal secretaries working on the underlying litigation had previously worked on the same case while at the plaintiff's law firm. *Id.* at 466. The court stressed that "disqualification is required under the facts presented," which are materially distinct from the facts here. *Id.* Similarly, in *In re American Home Products Corp.*, 985 S.W.2d 68, 72 (Tex. 1998), the court upheld disqualification of a law firm whose legal assistant had previously worked

on the underlying litigation for the opposing party. Again, Rutherford represented neither Schlumberger nor Dynamic 3D in the underlying litigation, which began long after she left Schlumberger, so these cases do not show that her presence at Acacia would pose the necessary "threat" of relevant disclosure under Texas law, even if Texas law did govern.[3]

### C.     No Governing Authority Bases Disqualification On A "Wink And A Nod."

Schlumberger claims that, presumptions aside, it proved an "implicit" communication from Rutherford to Acacia that "Acacia's claims [against Schlumberger] had merit" because Rutherford "concurred" in Dynamic 3D's decision to sue "her former client, Schlumberger." (SB 45.) Schlumberger is referring to Rutherford's response, via electronic voting button, to an internal

---

[3] The non-controlling decisions Schlumberger cites from the Federal Circuit and Seventh Circuit are also distinguishable. In *In re Apeldyn Corp.*, 391 F. App'x 873 (Fed. Cir. 2010) (unpublished), the District of Delaware had granted Samsung's motion to disqualify Apeldyn's attorney, Goodwyn, and all other attorneys at Goodwyn's firm of McKenna Long & Aldridge, because Goodwyn had previously represented Samsung in another patent infringement case that the court found was substantially related. Critical to the decision was the fact that "McKenna asked Goodwyn, out of numerous other attorneys at the firm, to work on this matter" for Apeldyn. Here, in contrast, it is undisputed that Rutherford never represented Dynamic 3D in this case. As the District Court acknowledged, "Rutherford is not employed or retained by Dynamic Geo and has not made an appearance in this case or any related case involving the '319 patent brought by Dynamic Geo." (A0004.) In *LaSalle Nat'l Bank v. Cty. Of Lake*, 703 F.2d 252 (7th Cir. 1983), the migrated attorney conceded that "he received a great deal of [confidential] information about" the very contract at issue in the underlying litigation before beginning work at his new firm."

Acacia email sent to a large group of Acacia executives asking if anyone had a business objection to an Acacia subsidiary being adverse to Schlumberger in litigation.  (AOB 65.)  Like every other recipient, Rutherford responded "I have no objection."  (*Id.*)  Schlumberger likens this to a "wink and a nod" that the First Circuit has held may constitute "unlawful tipping" liability for insider trading.  (SB 44.)

Schlumberger's argument fails for at least two reasons, even if one presumes Rutherford had relevant and confidential Schlumberger information.  First, an "implicit" communication is not the "affirmative evidence" that the Fifth Circuit requires.  For example, in *ProEducation*, Mindprint posited that Kennedy's attendance at certain meetings implicitly showed disclosure of confidences, but the Fifth Circuit held such evidence insufficient because it did not constitute "affirmative evidence" that Kennedy had actually acquired MindPrint's relevant and confidential information.  ProEducation, 587 F. 3d at 303.  Second, not a single case, controlling or otherwise, holds that such a "wink and a nod" proves disclosure of a former client's relevant and confidential information warranting attorney disqualification by imputation.  Schlumberger improperly asks this Court to override Fifth Circuit law.

## VI. THE DISTRICT COURT'S "FINDINGS" ARE CLEARLY ERRONEOUS.

When reviewing factual findings for clear error, this Court is to consider "the record viewed *in its entirety*." (SB 19 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) (emphasis added)).) In this light, and as explained in detail in Acacia's opening brief, the District Court's findings are implausible because they contradict the very evidence from which they are ostensibly drawn, and because they disregard the sworn and uncontradicted statements of Matthew Vella and Gary Fischman, which directly refute the charge that Rutherford disclosed relevant and confidential Schlumberger information to Acacia's "in-house counsel." (AOB 57-66.) Schlumberger ignores the relevant evidence much as the District Court did.

### A. Contrary to Schlumberger's Assertions, the District Court *Did* "Ignore Facts."

In arguing that the District Court's findings were not clearly erroneous, Schlumberger stresses that "[t]he district court did not ignore facts." (SB 31 (quoting *Schlesinger*, 2 F.3d 135, 139 (5th Cir. 1993)). That claim is incorrect. The District Court ignored key facts that contradict its findings.

In disqualifying Acacia's in-house counsel, the District Court found that Rutherford "did not excuse herself from either meeting" with Austin Geo "even though Schlumberger and Petrel were discussed." (A0012.) This *ignores and*

28

*contradicts* the undisputed fact that Rutherford told the attendees that she could not discuss Schlumberger or Petrel, and therefore they were not discussed at either meeting. (AOB 21-25, 55-57.)

The District Court further found that Rutherford attended a PowerPoint presentation at Acacia "discussing Schlumberger." (A0012.) This *ignores and contradicts* the undisputed fact that Rutherford dropped off of the conference call in question before Schlumberger was to be discussed. (AOB 58-61.)

The District Court made no other findings concerning purported discussions about Schlumberger or Petrel. Viewed in context of the entire record, a finding that Rutherford communicated confidential Schlumberger information during meetings or calls with Acacia or Austin Geo is implausible.

### B. *Nothing* Contradicts Acacia's Rebuttal Evidence.

Schlumberger does not dispute that the declarations of Vella and Fischman contradict the District Court's findings. It cannot. For example, Fischman (like Vella) declared under oath that:

> Charlotte Rutherford has never provided any confidential or proprietary information of Schlumberger, Ltd. Or any of the other defendants identified in the caption of this action (collectively, 'Schlumberger') to me or, to my knowledge, to any other person at [Acacia] or any company affiliated with [Acacia] . . .
>
> At no point has any one at [Acacia] or its affiliates ever informed me that Charlotte Rutherford shared such information

29

> with them.  To my knowledge, at no point has anyone ever been asked to obtain this type of information from Charlotte Rutherford . . .
>
> Charlotte Rutherford never provided me with any feedback, analysis, comments or revisions to the draft complaint by Dynamic 3D Geosolutions, LLC against Schlumberger.  I have never shared any pre-suit infringement analysis with Charlotte Rutherford concerning Schlumberger's alleged infringement of the '319 Patent.  To my knowledge, no one else has . . .

(A3375-76.)

Instead, Schlumberger contends the District Court was entitled to discount the declarations and gave them no weight because they are "self-serving."  (SB 53.)  This argument fails for at least three reasons.  First, the District Court did no such thing.  It acknowledged the declarations but never said they lacked credibility.  Indeed, the District Court did not factor them into its factual analysis at all.  Second, the District Court was purporting to apply a *rebuttal* burden to Acacia, which Acacia satisfied by *producing* the evidence.  Again, there is no evidence contradicting the declarations.  Third, even "self-serving" declarations support *denial* of a motion for imputed disqualification in the Fifth Circuit.  The declarations of Vella and Fischman are no more "self-serving" than those from attorneys targeted for disqualification in *ProEducation* and *Nat'l Oilwell*, where the Fifth Circuit and this District Court respectively denied disqualification because the movant did not satisfy its evidentiary burden.

Lastly, Schlumberger argues that the declarations have no value because they do not "define what they mean by 'confidential' information." (SB at 53.) This is as cynical as it is meritless. Again, it was *Schlumberger*'s burden to show "which specific piece of confidential information could lead to what specific harm." *Nat'l Oilwell*, 60 F. Supp. 3d at 769. It failed, and the District Court's conclusion to the contrary is implausible in light of the entire record.

### C.    Rutherford's Non-Communicative Acts Are Not "Affirmative Evidence" That She Communicated "Material Confidential" Information.

The District Court and Schlumberger agree there is no *proof* that Rutherford possessed material confidential Schlumberger information in the first place. (*See* A0010; SB 21.) For this reason, the District Court's findings concerning Rutherford's non-communicative acts have no probative value as to the relevant factual question here: whether Rutherford disclosed relevant and confidential Schlumberger information to Acacia's "in-house counsel." They are certainly not the "affirmative evidence" that Schlumberger needed to satisfy its burden. *ProEducation*, 587 F.3d at 303.

Rutherford's "concurrence" in someone else's decision to sue Schlumberger, and any "winks" or "nods" she allegedly made, are meaningless without *proof* that she had relevant and confidential information to imbue such conduct with materiality. And yet, these are ultimately the only "facts" that Schlumberger relies

31

on in trying to prop up the District Court's finding that Rutherford disclosed confidential information she was only *presumed* to have. (SB 42-45.) The District Court's finding that Schlumberger made such disclosure to Acacia's "in-house counsel" is implausible in light of the entire record and the Order should be reversed.

## VII.  CONCLUSION

Acacia respectfully requests that the Court reverse the Order and Judgment. Alternatively, Acacia requests that the Court vacate the Order and Judgment and remand to the District Court for proceedings consistent with the Court's ruling.

Dated:  December 4, 2015                Respectfully submitted,

                                        STRADLING       YOCCA       CARLSON
                                          & RAUTH, P.C.

                                        By:    */s/ Marc J. Schneider*
                                               Marc J. Schneider

                                        *Attorney for Appellants ACACIA RESEARCH CORPORATION and ACACIA RESEARCH GROUP, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2015, I caused the above and foregoing

REPLY BRIEF OF APPELLANTS ACACIA RESEARCH CORPORATION

AND ACACIA RESEARCH GROUP, LLC to be electronically filed with the

Clerk of the Court using CM/ECF, which will automatically send e-mail

notification of such filing to the following counsel of record who are deemed to

have consented to electronic service via the Court's CM/ECF system:

| | |
|---|---|
| Terrence J. Connolly<br>  terrence.connolly@lw.com<br>LATHAM & WATKINS LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>Telephone:  (212) 906-1200<br>Facsimile:  (212) 751-4864<br><br>Gabriel Bell<br>  gabriel.bell@lw.com<br>Maximilian A. Grant<br>  max.grant@lw.com<br>Thomas J. Humphrey<br>  thomas.humphrey@lw.com<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C. 20004-1304<br>Telephone:  (202) 637-2200<br>Facsimile:  (202) 637-2201<br><br>Ann Marie Wahls<br>  annmarie.wahls@lw.com<br>LATHAM & WATKINS LLP<br>330 North Wabash Avenue, Suite 2800<br>Chicago, IL  60611<br>Telephone:  (312) 876-7700<br>Facsimile:  (312) 993-9767 | Attorneys for Appellees<br>SCHLUMBERGER LIMITED<br>(SCHLUMBERGER N.V.),<br>SCHLUMBERGER HOLDINGS<br>CORPORATION,<br>SCHLUMBERGER<br>TECHNOLOGY CORPORATION |

| | |
|---|---|
| Michael James Collins<br>   mcollins@cepiplaw.com<br>John J. Edmonds<br>   jedmonds@cepiplaw.com<br>Shea Neal Palavan<br>   spalavan@cepiplaw.com<br>COLLINS, EDMONDS,<br>POGORZELSKI, SCHLATHER<br>TOWER, PLLC<br>1616 South Voss Road, Suite 125<br>Houston, Texas  77057<br>Telephone: (281) 501-3425<br>Facsimile:  (832) 415-2535 | Attorneys for Plaintiff-Appellant<br>DYNAMIC 3D GEOSOLUTIONS<br>LLC |

*/s/ Marc J. Schneider*
Marc J. Schneider

*Attorneys for Appellants ACACIA
RESEARCH CORPORATION and
ACACIA RESEARCH GROUP, LLC*

## CERTIFICATE OF COMPLIANCE

## UNDER FEDERAL RULES OF APPELLATE PROCEDURE

## 32(a)(7) AND FEDERAL CIRCUIT RULE 32

Counsel for Appellants Acacia Research Corporation and Acacia Research Group, LLC certifies that the brief contained herein has a proportionally spaced 14-point typeface and contains 6,866 words, based on the "Word Count" feature of Word 2010, including footnotes and endnotes.   Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this word count does not include the words contained in the Table of Contents and Table of Authorities.

Dated:  December 4, 2015          Respectfully submitted,


                                  */s/ Marc J. Schneider*
                                  Marc J. Schneider

                                  *Attorney for Appellants ACACIA RESEARCH CORPORATION and ACACIA RESEARCH GROUP, LLC*